# Cases

# FOURTH DEPARTMENT

IN THE

## APPELLATE DIVISION,

### December, 1898.

---

ALEXANDER McDONNELL, Appellant, *v.* THE NEW YORK CENTRAL
AND HUDSON RIVER RAILROAD COMPANY, Respondent.

*Negligence — sudden stoppage of a train by a passenger applying the air brake —
fall of another passenger from the platform of a car in consequence thereof.*

In an action brought by a passenger who, while standing, as there was evidence
tending to show, upon the platform of a car, was thrown to the ground as a
consequence of the unauthorized application of the air brake by a fellow-
passenger, by which act the train, while moving at about twenty miles an
hour, was, with the exception of the engine and three forward cars, which
were severed from it, suddenly stopped within half a car's length, a verdict in
favor of the railroad company will not be disturbed on appeal where the evi-
dence indicates that the injured passenger had passed from the rear car for-
ward and was returning to the fourth car from the front, although there were
unoccupied seats in three forward cars when the accident occurred.

APPEAL by the plaintiff, Alexander McDonnell, from a judgment
of the Supreme Court in favor of the defendant, entered in the
office of the clerk of the county of Jefferson on the 11th day of
February, 1898, upon the verdict of a jury, and also from an order
entered in said clerk's office on the 15th day of February, 1898,
denying the plaintiff's motion for a new trial made upon the minutes.

The action was brought to recover damages resulting to the plain-
tiff from the alleged negligence of the defendant.

*Frank C. Sargent,* for the appellant.

*Henry Purcell,* for the respondent.

HARDIN, P. J. :

Plaintiff was a member of an excursion party that left Picton and other parts of Canada on the 12th day of July, 1897; they were brought to Cape Vincent by boat and from there were transported in two different special trains over the defendant's road to the city of Watertown. The excursion party left Watertown at about six-thirty o'clock in the evening to return to Cape Vincent. The defendant provided for the excursion party eighteen cars. The party consisted of 840 passengers. The carrying capacity of the cars was 1,152. After the cars had passed some 19 miles from the city of Watertown the accident occurred of which the plaintiff complains. The train was brought to a sudden stop and he was precipitated upon the ground. There was a conflict in the evidence as to whether he was on the platform of the fourth car from the front at the time of the occurrence of the accident, or whether he was inside the door. His own testimony, and that of a witness who supports him, is to the effect that he was inside the car near the door. Several witnesses testify to the contrary, that he was on the platform, and there are several admissions indicative that he was himself careless at the time the injuries were received. In order to justify a recovery against the defendant it was incumbent upon the plaintiff to establish that he was guilty of no negligence which contributed to the injury, and that the defendant was guilty of such negligence as caused the injury. (*Deyo* v. *N. Y. C. R. R. Co.*, 34 N. Y. 9.) That case quotes with approval *Bowen* v. *N. Y. C. R. R. Co.* (18 N. Y. 408), and also quotes from Story on Bailments the rule in respect to the liability of a common carrier to its passengers, which rule is in the following language : " Passenger carriers bind themselves to carry safely those whom they take into their coaches, as far as human care and foresight will go, that is, to the utmost care and diligence of very cautious persons." In commenting upon that rule DAVIES, J., said : " The familiar form of expressing the rule of duty of the carrier is ' as far as human care and foresight will go.' Negligence is the violation of the obligation which enjoins care and caution in what we do." In that case " some evil and malicious person had drawn out spikes and pushed some of the rails from their bed, and by this means the engine and part of the cars were turned off the track " and the plaintiff was injured. At the Circuit plain-

tiff was nonsuited and the judgment was sustained at General Term and in the Court of Appeals. The same doctrine was approved in *Palmer* v. *D. & H. C. Co.* (120 N. Y. 170).

Upon the trial now brought in review it was insisted by the defendant that the principle applied in the cases to which reference has been made was applicable to the case in hand. Evidence was given tending to establish that, while the train upon which the plaintiff was riding was in motion at the rate of about twenty miles an nour, one of the passengers in the rear coach went to the end of the car with a view of getting some water to drink, and not finding the water readily in the tank he looked up, raised up his hand and suddenly pulled the lever controlling the emergency brake and caused the same to operate so fully and so suddenly that it brought the train to a standstill in about half the length of a car, except that the engine and the three forward cars, having been severed, continued about 150 feet. The plaintiff insists that he was inside of the fourth car from the engine at the time the train was brought to a standstill and that he was precipitated through the open door to the ground and received the injuries of which he complains. The evidence in behalf of the defendant indicates that he was upon the platform at the time the train was stopped and that he was precipitated from the platform to the ground. Evidence was taken upon the trial as to whether the stoppage of the train was caused by the application of the air brakes by one Smith, who was in the rear car and testified that he pulled the lever. The plaintiff's theory was that the breaking in two of the train caused the plaintiff to be precipitated out of the car and to the ground. The conflicting theories maintained by the respective parties at the trial were very extensively discussed in the charge submitted by the learned trial judge to the jury, and the question in its various aspects was explained to the jury; and the weight of the evidence supports the finding of the jury that the unauthorized application of the air brakes to the train caused the same to be broken in two and the sudden jar threw the plaintiff to the ground.

The plaintiff was a committeeman, having some duties to do in respect to the excursion, and he had passed from the rear cars forward and had entered the foremost cars and apparently was returning when the accident occurred. The evidence satisfactorily indi-

cates that there were plenty of seats in the first three cars near the engine, and there is some evidence that there were seats in some of the other cars unoccupied and that the plaintiff might have occupied a seat in the train without any difficulty, which he failed to do. Grave questions of fact were presented for the jury to determine as to whether the defendant had been guilty of negligence and the plaintiff free from contributory negligence. Certain admissions made by the plaintiff, if believed, would warrant the jury in finding that he was not free from contributory negligence.

At the time the accident occurred the defendant was using the Gould coupler, and it gave evidence that that coupler was in use generally in the State of New York, and evidence tending to show its worthiness for the purposes for which it was designed. After the close of the defendant's evidence in chief the plaintiff put upon the stand one Kellogg, who testified that he was an inspector of cars in Jersey City; that he was familiar with the different kinds of couplers, and that the Gould coupler was used upon the Lehigh Valley railroad and West Shore railroad, and that he inspected some 100 Gould couplers every day, and some 425 Jannay couplers used on the Pennsylvania railroad. He then explained the construction of the Gould coupler to a considerable extent, and upon certain objections being made to some questions propounded to the witness, the court observed: "You may show, if you please, if you want to show, that in the operation of this coupler that there may be mistakes, and that it might not be properly coupled when they start; that is one thing, but to show that there is any defect in the Gould coupler, that it is not a proper coupler to be used, I don't see how you can do that." The witness was then allowed to give a further description of the Gould coupler and of its operations, and his observations in respect thereto, and an exception was taken to the remark of the court that he would not permit a litigation to show that one coupler or one brake was better than another, inasmuch as it appeared that the Gould coupler was in general use in the State. The exceptions were not taken to the questions propounded to the witness, but occurred in the colloquium that ensued between the counsel and court, and in some instances the evidence was received after intimations made by the court adverse thereto. Besides, it appears that the cars were inspected before the train left

Watertown, and there is no evidence indicating that the parting of the train was caused by any omission to properly couple the cars, and a large volume of the evidence indicates that the uncoupling was caused by the power of the engine at the time the air brakes were applied by Smith in the rear coach.

The judgment and order should be affirmed, with costs.

All concurred.

Judgment and order affirmed, with costs.