### McDONOUGH v. THIRD AVENUE R. CO.

(Supreme Court, Appellate Division, First Department. June 10, 1904.)

1. STREET RAILROADS—INJURIES TO PASSENGER—SIGNAL BY ANOTHER PASSENGER.

A street railroad company is not liable for injuries to a passenger caused by the premature starting of the car in consequence of a signal given to the motorman by another passenger.

Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by Bridget McDonough against the Third Avenue Railroad Company. From a judgment for defendant, and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

John C. Robinson, for appellant.
Charles F. Brown, for respondent.

O'BRIEN, J. The plaintiff sued to recover for personal injuries which she alleges were sustained by being thrown by the sudden starting of one of defendant's cars while she was attempting to alight. Upon the trial there was no serious dispute but that the bell was rung to start the car. The defendant claimed, however, that it was rung by some passenger on the rear platform while the conductor was inside the car. Counsel for the plaintiff contended not only that it was a question of fact for the jury as to whether the bell to start the car was rung by the conductor or by a passenger, but also that it was for the jury to say whether the starting of the car under the circumstances was or was not negligence on the part of the defendant, irrespective of the question of who pulled the bell, and that, whether the conductor rang the bell, or some one else did, the jury might find that the starting of the car was an act of negligence for which the defendant was liable. This latter contention the court refused to uphold, and instructed the jury that unless they "find as a fact in this case that the conductor did ring the bell, or that the motorman started the car without the ringing of the bell," they must find a verdict for the defendant, and that, "to give a verdict for the plaintiff," they must find "that the starting of the car was by the action of the conductor or motorman." The learned trial judge asked the jury to find upon two questions of fact aside from the general verdict, first, "Had the plaintiff alighted with her feet upon the ground when the car started?" and, second, "Was the signal bell to start the car rung

¶ 1. See Carriers, vol. 9, Cent. Dig. § 1159.

88 N.Y.S.—39

by the conductor?" The jury were unable to answer the first question, but answered the second in the negative, and also found a general verdict for the defendant.

The question upon this appeal is whether the charge of the court to which the plaintiff excepted was right, namely, that "if the jury find that the starting of the car was in response to a signal which the motorman supposed to come from the conductor, but which was actually made by the unauthorized action of a passenger, the plaintiff cannot recover."

In support of the contention that this view of the learned trial judge was erroneous, the appellant relies upon the obligation which rested upon the defendant, as a carrier of passengers, and the relation of carrier and passenger that existed between the defendant and the plaintiff, which made it the duty of the defendant to see to it that the plaintiff was not injured either through any act of negligence of its own or on the part of a third person, which included the obligation of seeing to it that the plaintiff had a reasonable opportunity to alight, and that the car was not started while she was in the act of alighting. As abstract propositions, or as formulations of the rule bearing upon the obligations which rest upon a common carrier of passengers, we might have little fault to find with these contentions; but the concrete question which we are required to pass upon is within much narrower limits, namely, whether or not the obligation resting upon the defendant made it responsible for an injury occasioned by the unauthorized act of a passenger in pulling the bell and thus starting the car.

In approaching the discussion, we assume the appellant would concede that the action of the motorman in starting the car in response to the proper signal was not a negligent act, and that there was no affirmative act of negligence on the part of the conductor which was the cause of the accident. The negligence of the defendant, if any, must consist, therefore, in the failure of the conductor to at all times have under his control the bell cord, so that it was made impossible for a passenger to ring the bell and start or stop the car. In other words, the logic of the appellant's contention must carry him to the affirmance of the proposition that the defendant was an insurer against any accident which might result to a passenger in alighting from a car caused by the unauthorized action of another passenger, whether by accident or design, in pulling the bell.

The cases relied upon by the appellant in support of this contention are not in point. Poulin v. Broadway R. R., 61 N. Y. 621, and Smith v. Kingston R. R., 55 App. Div. 143, 67 N. Y. Supp. 185, support the general proposition, which is well settled, that a conductor should give a passenger time to alight; and the Pennsylvania case cited, of McCurdy v. United Traction Co., 15 Pa. Super. Ct. 29, holds that a conductor cannot delegate the duty of starting the car, and that, if he starts it upon information from a passenger that everything is "all right," he is liable, upon the ground of negligence, to a passenger thereby injured. Nor are we assisted by the cases which place upon the employés of a common carrier the duty of protecting a passenger who has been assaulted by strangers or other

passengers, because all such cases are easily distinguishable. These cases all proceed, and rightly, upon the theory that, upon the facts presented, there was an affirmative duty resting upon the employés which they were bound to discharge; but that is quite a different proposition from the one which we are considering, as to whether the obligation which rests upon the defendant as a carrier of passengers upon street cars goes to the extent of requiring the conductor at all times to have under his control the bell cord, so that no passenger or third person by any possibility can pull it. There is no suggestion here that the conductor had reason to apprehend that a passenger would pull the bell, and, therefore, to predicate negligence upon the fact of its having been pulled by a passenger without authority, and without the knowledge or assent of the conductor as the plaintiff was alighting, it would be necessary, as stated, to go to the extent of holding that under any and all circumstances the duty rested upon the conductor of so controlling and handling the bell rope while a passenger was alighting, so that its being pulled by a passenger was impracticable or impossible.

Considering the greater danger to be apprehended from such an unauthorized act of a passenger on a steam or an elevated railroad as compared with the less serious consequences to be anticipated from such an act when committed by a passenger upon a street surface road, we assume it will be conceded that the obligation, to say the least, is as strict and stringent in the case of the steam or elevated railroad as in that of the street surface railroad. Although with respect to none of these roads have we any case directly in point, there are two which furnish, we think, strong argument in support of the view that, even with respect to steam railroads or elevated structures, the companies are not liable for the unauthorized action of passengers or third persons in interfering with the operation of the train which results in the injury of other passengers.

In Ferry v. Manhattan Railway, 118 N. Y. 497, 23 N. E. 822, wherein the plaintiff received injuries while attempting to alight from one of the defendant's trains, the question was whether the train was started by one of the brakemen, or by a passenger who caught hold of the bell rope to steady himself, the court charged that, if the jury found that the train was started by the passenger, the defendant was not negligent, but, if not so started, it was negligent. This charge was not expressly held to be a correct exposition of the law, but it was seemingly opposed, in the opinion of the Court of Appeals, although it appears that the defendant having received the benefit of that charge, and the plaintiff having recovered a verdict, the affirmance of the judgment rested upon the fact that, as the jury had found in plaintiff's favor upon the disputed questions of fact, the verdict should not be disturbed. And in McDonnell v. N. Y. Cen., 35 App. Div. 147, 54 N. Y. Supp. 747, where a passenger, while standing, as the evidence tended to show, upon the platform of a car, was thrown to the ground as the result of the unauthorized application of the air brake by a fellow passenger, by which act the train, while moving at a rapid speed, was suddenly stopped, and in which case the verdict of the jury was favorable to the defendant, in holding

that the plaintiff was guilty of contributory negligence in being upon the platform, the learned judge writing the opinion affirmed the judgment as supported by sufficient evidence; but he also referred with approval to the case of Deyo v. N. Y. C. R. R., 34 N. Y. 9, 88 Am. Dec. 418, wherein it appeared that "some evil and malicious person had drawn out spikes and pushed some of the rails from their bed, and by this means the engine and part of the cars were turned off the track," and the person was injured; and at the circuit the plaintiff was nonsuited, and the judgment was sustained at General Term and in the Court of Appeals. These two cases would seemingly indicate that, even as to steam and elevated railroads, a passenger injured through the unauthorized act of a fellow passenger in interfering with the operation of the train cannot recover of the railroad company on the ground of negligence. We think, therefore, it would be going further than any case to which our attention has been called to hold that the obligation which rests upon a carrier of passengers of street surface cars includes the obligations of insuring against the unauthorized act of a passenger in pulling the bell, which act, by starting the car, is the proximate cause of injury to another passenger alighting therefrom.

There was no suggestion that the conductor was not properly attending to his duties, or that he was at any part of the car where of right he should not have been, but the plaintiff stands fairly and squarely upon the proposition that it was the duty resting upon the defendant, under any and all circumstances, to protect her from being injured while alighting by the starting of the car, and that, though her injury was caused by the unauthorized act of a passenger in ringing the bell, nevertheless it was competent for the jury to find the defendant guilty of negligence.

We have not overlooked the additional and somewhat broader claim that upon all the facts and circumstances, even though the jury found that the car was started without the knowledge or assent of the conductor, it was still a question of fact for the jury as to whether the defendant was negligent. We think, however, we have sufficiently discussed the question to indicate our view that this contention is not sound, and that the learned trial judge was right in charging the proposition to which exception was taken.

The judgment accordingly should be affirmed, with costs.

McLAUGHLIN and HATCH, JJ., concur. PATTERSON, J., concurs in result.

INGRAHAM, J. (dissenting). On the 14th of February, 1898, the plaintiff boarded one of the defendants' cars at Third avenue and Seventy-Third street. Upon the trial she testified that when she got to Twenty-Eighth street she signaled to the conductor to stop, that the car came to a full stop at Twenty-Seventh street, and that her daughter, who was with her, got off first. The plaintiff then took hold of the handle of the car, and, as she was getting off, the car started forward, and she was thrown to the ground and injured. At the time the car started, the conductor was inside of the car, and

there was evidence that the usual signal was given, and immediately the car started. On behalf of the defendant, the conductor testified that he gave the signal to stop the car at Twenty-Seventh street, in answer to the request of the plaintiff; that the car stopped; that he was inside of the car, collecting fares; that he saw the plaintiff's daughter get off the car; that somebody outside said to him, "Conductor, ring your bell;" that he did not ring the bell; that somebody on the outside of the car rang it, and then the car started; that when the car started the plaintiff was off the car, standing in the street, clear of the car; that somebody on the rear platform rang the bell; that, when some one called back to him, "Conductor, start your car," he looked through the window to see if everything was all right, and he then saw the plaintiff standing in the street; that he did not ring the bell, because he wanted to see if everything was all right; that the bell strap was on the other side of the car, and he could not reach it from where he was compelled to stand to look out of the window to see if the plaintiff was off the car. A passenger testified that he saw the conductor looking out of the window, watching the plaintiff get off the car, and that, while the conductor was watching, some one on the rear platform pulled the bell strap, and the car went on; that the plaintiff was off the car before it started; that the bell did not ring until after the plaintiff was on the street, free from the car; and that he saw a man on the back platform pull the bell, who was not the conductor of the car.

The court, in submitting the case to the jury, requested them to specifically answer two questions. The first was, "Had the plaintiff alighted, with her feet upon the ground, when the car started?" The second question was, "Was the signal bell to start the car rung by the conductor?" The jury were instructed that, if the conductor did not ring the bell, they should find a general verdict for the defendant. The jury stated that they were unable to answer the first question, whereupon the court withdrew it; and the jury then answered the second question in the negative, and found a general verdict for the defendant, and from the judgment entered upon that verdict the plaintiff appeals.

In submitting this question to the jury, the learned trial judge said:

"If the conductor was standing, as he says, with his hand on one of the west straps, looking out to see whether this lady and her daughter had alighted in safety, and he saw her upon the ground, then, under the issue as it is here presented, gentlemen, the charge of negligence is not sustained, because then the car had the right to move from the indications apparent to that conductor. * * * Has the plaintiff convinced us that she was in the act of alighting from the car, and was thrown down because the sudden starting of the car propelled her along with the car when she was in a position that she could not control her equilibrium, or not?· If you are convinced of that, why, then, gentlemen, you are at liberty to find that this defendant was guilty of negligence, because it might very well be a negligent act to jerk a car suddenly at a time that a passenger was in the act of alighting, when the conductor himself knew that the passenger was in the act of alighting."

These instructions having been given, counsel for the plaintiff said:

"In view of this second question which you have submitted to the jury, I wish to state this to the court: That I contend that, even if the jury find

that the bell was rung by somebody other than the conductor, still it is for them to say whether the starting of that car was or was not the negligence of the defendant."

To which the court replied:

"I will give you an exception to that. I am inclined to hold in this case that, if the jury find that the starting of the car was in response to a signal which the motorman supposed to come from the conductor, but which was actually made by the unauthorized action of a passenger, the plaintiff cannot recover."

To this the plaintiff excepted. The jury having retired, they returned to the court for further instructions, whereupon the court stated to the jury:

"The theory of the defendant is that the car started when it did because a passenger on the rear platform announced that all was right, and himself pulled the bell; that, if the car started in consequence of the bell being rung by somebody aside from the conductor and the motorman, the company is not liable for the fall, because the starting of the car was then not the negligent act of the defendant."

To that, counsel for the plaintiff excepted and asked the court to charge that:

"It is for the jury to say whether the starting of the car, under the circumstances disclosed by the evidence, was or was not negligent on the part of the defendant, irrespective of the question who pulled the bell."

That the court declined, and the plaintiff excepted.

The question that was submitted to the jury, and which was to control their verdict, was whether or not the conductor rang the bell to start the car, and whether it was in answer to that signal that the motorman started the car. The jury were expressly instructed that if they should find that the conductor did not ring the bell, but that the motorman started the car in response to a bell which was rung by some one else, then, as a matter of law, the defendant was not guilty of negligence, and the plaintiff could not recover; and the question presented is whether this instruction was error. I do not find that this question has been directly passed upon in any case in this state. The defendant was a common carrier, and the plaintiff was a passenger. That relation existing, it was the duty of the defendant to allow the passenger reasonable opportunity to alight from the car. A violation of this duty made it responsible for any injury caused thereby to the passenger. This was an affirmative duty imposed upon the carrier, because its employés had the control and management of the car, and were to determine when the car should start after it had come to a stop to allow the passenger to alight. If the car did stop for the purpose of allowing the passenger to alight, and it started before the passenger had had such an opportunity, there was a violation of this duty, which justified the jury in finding that the injury sustained by the plaintiff was caused by the negligence of the defendant, and for which the defendant was responsible.

The distinction between a cause of action which is based solely upon the negligence of a common carrier in relation to those with whom it has no contractual relation, and one based upon a violation

of the carrier's obligation to its passengers, is well settled. Many cases may be cited to show this distinction. It is illustrated in Carpenter v. Boston & Albany R. R. Co., 97 N. Y. 494, 49 Am. Rep. 540. The plaintiff, when upon the station platform of the defendant railroad, about to take a train, was knocked down and severely injured by a loaded mail bag thrown from the postal car while the train was in motion, and, as the court said, "the only answer to his demand for compensation is that the missile was negligently thrown by the person in charge of the mail car, an employé or servant of the United States, and not of the company," and the defendant was not liable for his act; but it was held—citing Putnam v. Broadway, etc., R. R. Co., 55 N. Y. 108, 113, 14 Am. Rep. 190—"that a railroad company was bound to exercise the utmost vigilance not only in guarding its passengers against careless interference by others, but even against violence, and if, in consequence of neglecting this duty, he receives injury, which, in view of all the circumstances, might have been reasonably anticipated, it is liable." In Dwinelle v. N. Y. C. & H. R. R. Co., 120 N. Y. 117, 24 N. E. 319, 8 L. R. A. 224, 17 Am. St. Rep. 611, this distinction is also illustrated. There the plaintiff had purchased tickets for himself and wife from Geneva to New York, and also procured tickets for a section in a sleeping car from the porter of the car. The train was detained at Utica by an accident on the road, and after waiting some time the plaintiff was informed by the porter of the sleeping car that he was required to take another train to be carried to New York. Before taking the train the plaintiff requested the porter of the sleeping car to give him a ticket showing that he was entitled to sleeping-car accommodations on the next train, or to state to the conductor that he was entitled to such accommodations. This the porter refused to do, and after some dispute the porter struck the plaintiff a violent blow in the face, knocking him down and rendering him unconscious. It was held that this presented a question for the jury, and the obligation of the carrier is stated as follows:

"Among the obligations which such contract imposes upon the carrier are to protect the passenger against any injury from negligence or willful misconduct of its servants while performing the contract, and of his fellow passengers and strangers, so far as practicable, to treat him respectfully, and to provide him with the usual accommodations and any information and facilities necessary for the full performance of the contract upon the part of the carrier. And these obligations continue to rest upon the carrier, its servants and employés, while such contract continues and is in process of performance."

In McDonald v. Long Island R. R. Co., 116 N. Y. 546, 22 N. E. 1068, 15 Am. St. Rep. 437, in discussing the duty of the railroad company to give to passengers a reasonable opportunity to leave its train, it was said:

"In this instance, upon the testimony as given on the part of the plaintiff, if taken as true, the conclusion was required that the train did not stop a reasonable or sufficient time for the plaintiff to leave it before it started, and for that reason that the defendant was ·chargeable with negligence in that respect, unless there was some other fact bearing upon that question for the consideration of the jury. It is argued that the defendant may have been

relieved from this charge of negligence by the fact, if so found, that the conductor had no knowledge that the plaintiff desired to leave the train at that station. It may be that the conductor did not have such knowledge, and that he did not see the plaintiff when he left his seat, and, thus failing to observe that any passenger was leaving the train, he may have deemed delay unnecessary. * * * The fact that the conductor did not know that the plaintiff intended to leave, and did not see him leaving, the car, cannot furnish the defendant with an excuse for not giving the plaintiff a reasonable time to get from the train, unless the latter was so situated as to conceal himself from observation. * * * Such opportunity to alight from a train is within the undertaking assumed by a railroad company, and the safety of travel requires the observance of that duty. The fact that a passenger proceeds to leave a train at a station where it has stopped ought, for the purpose of his protection, to be known by the company, through its servants, and therefore, so far as that is essential, it is deemed chargeable with knowledge; and, if the proper discharge of duty in that respect requires more means of observation or precaution, it should be furnished. The defense cannot successfully rest upon the inference that the conductor was in a situation where he could not or did not observe the purpose of the plaintiff to depart from the train."

And in Ferry v. M. R. Co., 118 N. Y. 497, 23 N. E. 822, it was said:

"It was the duty of the latter to give passengers a reasonable opportunity to leave the train at stations where they wished to alight. The conclusion was warranted by the evidence that no fault of the plaintiff contributed to the injury. And as the train and its movement were apparently under the control of the employés of the defendant, the presumption was permitted that the failure to give the plaintiff the opportunity to get from the car before the train started, and its consequences to her, were attributable to the negligence of the defendant. And the burden was cast upon the defendant to repel such presumption."

This positive duty having been imposed upon the defendant by virtue of its contract of carriage, to escape liability, where a passenger has not been awarded sufficient time to alight from a train, the defendant must prove that the accident was occasioned by some event over which it had no control, so that the starting of the car while the plaintiff was in the act of alighting was not the act of the defendant's employés. The fact that the conductor or motorman in charge of the car did not have knowledge of the fact that the plaintiff was alighting was expressly held not to be an excuse in the case of McDonald v. Long Island R. R. Co., supra. Here the motorman had charge of starting the car. He started the car in response to a signal which he supposed came from the conductor. The jury have found that that signal was not given by the conductor, but was given by a passenger upon the car, and under circumstances which I have no doubt relieved the conductor from the imputation of any negligence; but can that be said, as a matter of law, to relieve the defendant from responsibility? The responsibility of the defendant does not rest upon the negligence of any particular employé, nor does it require the plaintiff to prove that any particular employé was guilty of an act of negligence. The defendant's duty was to give this plaintiff an opportunity to alight. To perform that duty, it was bound to provide such methods for the starting of its car as would insure a passenger the opportunity which by the contract of carriage the defendant was bound to insure him. It was the duty of the conductor to give the signal when the passenger had alighted. He gave no signal, but notwithstanding that fact the motorman started the car;

and the fact that the motorman mistook the signal given to him as a signal from the conductor does not, as a matter of law, absolve the railroad company from liability for a failure to perform the duty which it owed to its passengers.

There still remains the question whether, under all the circumstances, there was, as a matter of fact, negligence; and the whole question, it seems to me, was one for the jury to say whether there was negligence in the method adopted of running the car, the communication of signals, and the act of the motorman in starting the car, which resulted in the failure of the defendant to give the plaintiff an opportunity to alight. I am therefore of the opinion that it was error to charge the jury that, as a matter of law, the defendant was relieved from all responsibility for the starting of the car by proof that the signal to start was given by a passenger, and not by the conductor, and for that reason there must be a new trial.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.