Hester Vischer, Appellant, v. Northwestern Elevated Railroad Company, Appellee.

Gen. No. 16,983.

1. CARRIERS—*not liable on unauthorized signal to start.* An elevated railway company is not liable for injuries sustained by a passenger in alighting from a car as a result of signal to start the car or train, given by a passenger or one not an employe of the company, without the knowledge or authority of the conductor.

2. TRIAL—*when part of statement may be read to jury.* Counsel for defendant may read to the jury parts of a written statement made by plaintiff at the time of her injury without offering the whole statement in evidence. If counsel for plaintiff desires to put the whole statement in evidence he can do so.

3. APPEAL AND ERROR—*necessity of adverse ruling.* Alleged error in allowing counsel for defendant to read parts of a written statement made by plaintiff at the time of her injury without offering the whole statement in evidence cannot be reviewed in absence of an offer by plaintiff to put the whole statement in evidence or an adverse ruling upon such offer.

4. EVIDENCE—*when physician may be asked hypothetical question.* In a personal injury case physicians may be asked hypothetical questions as to matters of skill and science.

Appeal from the Superior Court of Cook county; the Hon. HOMER ABBOTT, Judge, presiding. Heard in the Branch Appellate Court

at the October term, 1910.    Affirmed.    Opinion filed July 9, 1912.
Rehearing denied and opinion modified July 29, 1912.

DAVID F. MATCHETT and AMOS W. MARSTON, for appellant; JAMES P. HARROLD, of counsel.

SHERIFF, DENT, DOBYNS & FREEMAN, for appellee; FRANCIS G. HANCHETT, of counsel.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

By this appeal it is sought to reverse a judgment rendered in the Superior Court of Cook county in favor of appellee upon verdict of the jury.

The negligence averred in the declaration is in substance that while the plaintiff was a passenger of appellee on its elevated railroad, the train stopped at Randolph street station in the city of Chicago to allow passengers to alight; appellant being about to alight, the train was started by appellee's servants without warning to her, whereby she was caused to fall and received injuries.

There have been three trials of the case; the first trial resulted in a verdict of not guilty and a special verdict upon this interrogatory: "Was any servant of defendant guilty of negligence which contributed to causing the accident?" to which the jury answered, "No." A motion for a new trial was sustained because of erroneous instructions. The second trial ended in a disagreement of the jury. The third trial, now brought by this appeal before us for review, resulted in a verdict of not guilty and a special verdict upon the following interrogatory: "Was any servant of defendant guilty of negligence in any act or omission contributing to the cause of the accident?" to which interrogatory the jury answered, "No."

It appears from the evidence without dispute that plaintiff and her sister, Mrs. Ophelia Devitt, and the latter's son, James B. Devitt and wife and daughter,

Mrs. Barrett Anderson, and husband, were passengers on a southbound train of the defendant on the evening of December 31, 1905. The train arrived at the Randolph street station about nine o'clock, and there stopped to receive and discharge passengers. The train was made up of three cars, and the party above named was on the second car. Upon leaving the train at the station, Mr. Devitt and wife were the first of the party to walk off at the rear end of the second car, and they were followed by Mr. and Mrs. Anderson, Mrs. Ophelia Devitt and the plaintiff, in the order named. The train started forward about the instant Mrs. Ophelia Devitt was stepping off, and she fell on the platform of the station. Plaintiff was walking behind Mrs. Devitt, the distance varying according to the testimony from immediately behind to several feet. The plaintiff testified she was thrown from the car when it started, while other witnesses testified that she stepped from the car after it was in motion, and after her sister had fallen. Whether she was thrown or deliberately stepped from the car has no bearing upon the question of defendant's negligence, and gives rise only to the question of plaintiff's contributory negligence.

The train was composed of three cars operated by a motorman, who occupied a booth on the left side of the front end of the forward car; a conductor, who was stationed on the rear platform of the forward car and the front platform of the second car, and a guard stationed upon the rear platform of the second car and the forward platform of the third car. The starting signals, two bells, always originated with the guard, who passed them to the conductor by pulling a rope which passed forward through the upper part of the car, not beyond reach of passengers, to the front end where it was attached to a bell, which was rung when the rope was pulled. The conductor in turn, when his gates and platforms were ready for starting, would

pass the signal by similar means of rope and bell to the motorman.

The evidence tends to show that on the occasion in question the train had stood at the station such a length of time before the accident that the conductor between the first and second cars had opened his gates, let his passengers off and on, and again closed the gates, and was ready to go ahead. While waiting he received the regular go-ahead signal, two bells, rung from the rear, and immediately passed it up to the motorman, who started the train; a few seconds later when the train had moved a few feet the conductor received a stop signal, one bell, from the rear, and immediately passed it up to the motorman, who at once stopped the train. The train had moved a distance variously stated by plaintiff's witnesses from five to thirty feet. In the meantime the plaintiff had fallen to the platform.

The evidence shows that the guard on the rear of the second car did not give the go-ahead signal. He did give the subsequent stop signal. This is shown by the testimony of James B. Devitt, Alfred C. Borden, H. C. Friedenberg and George W. Murphy.

From this testimony as to giving of signals we are of the opinion that the train was not started while the plaintiff was alighting therefrom in pursuance of any signal given by the guard between the second and third coaches of the train, and that the jury were justified in both their special and general verdict in finding that none of defendant's servants were guilty of negligence in any act or omission contributing to the cause of the accident, and in finding that the defendant was not guilty.

In our opinion the law is well settled that a railway company is not liable for injuries sustained by a passenger in alighting from a car as a result of a signal to start the car or train, given by a passenger or one not an employe of the defendant without the knowl-

edge or authority of the conductor. Krone v. S. W. Mo. Elec. Ry. Co., 97 Mo. App. 609; Cary v. Los Angeles Ry. Co., 157 Cal. 599; Fanshaw v. Norfolk & P. T. R. Co., 108 Va. 300; Cohen v. Phila. R. T. Co., 228 Pa. State 243; O'Neil v. Lynn & Boston R. R. Co., 180 Mass. 576; Moore v. Woonsocket St. Ry. Co., 27 R. I. 450.

This general rule may be said to be qualified in this state in North Chicago St. R. R. Co. v. Cook, 145 Ill. 551, to the extent that "if the conductor or agents of the railway company in charge, by the exercise of due care and diligence, could have prevented the moving of the car, and thereby avoided the injury," the railway company would not be exempt from liability. In that case the evidence showed that the conductor was on the front platform of the car when the unauthorized signal to start was given and the jury were warranted in finding that the conductor knew that the signal was given by an unauthorized person, and that in the exercise of the highest degree of care, skill and diligence for the safety of the passenger consistent with the mode of conveyance employed, he could know, and should have known, whether any person was attempting to get on or off his car before permitting the same to start in such a manner as would be likely to injure a person so getting on or off the same. In this case no such evidence was produced upon which the jury could base a finding of neglect of such care on the part of the conductor or guard.

Many of the instructions tendered by the defendant and given by the court are criticized on various grounds. We have examined the instructions with care, and criticisms made upon the instructions, and the arguments advanced in the brief in support of the criticisms, and are of the opinion that no material error was committed by the court in giving the instructions.

It is contended that the court improperly allowed counsel for defendant to read to the jury parts of a

written statement which it is claimed was made by the plaintiff about the time of the injury, without offering the whole statement in evidence or identifying it. If counsel for plaintiff had desired under such circumstances to put the whole statement in evidence he could doubtless have done so. We fail to find in the record that it was attempted to put the whole statement in evidence, or any adverse ruling by the court upon such offer.

It is argued that the court erred in its ruling on certain hypothetical questions propounded by counsel for the defendant to the physicians examined in the case. In our opinion the questions propounded with the answers elicited related to matters of skill and science in regard to which it was proper to inform the jury. The case of I. C. R. R. Co. v. Smith, 208 Ill. 608 is clearly distinguishable from the case at bar, and has no application to it. In that case, the questions asked for opinions concerning matters of common observation and involving no skill and science.

We find no reversible error in the record, and the judgment of the court below is affirmed.

*Affirmed.*