CORA and JULIUS PRIDE v. PIEDMONT AND NORTHERN RAILWAY
COMPANY.

(Filed 27 November, 1918.)

**Carriers of Passengers — Electric Railroads — Negligence — Strangers —**
**Reasonable Anticipation—Instructions—Trials—Appeal and Error.**

A common carrier is not responsible in damages for injuries resulting from the unauthorized acts of strangers or other passengers on its cars which it could not reasonably foresee or anticipate, in the exercise of ordinary care, under the circumstances; and where a passenger on an interurban electric railway sues to recover damages for an injury received, when he was alighting at his station, from the sudden and unexpected forward movement of the car, after it had come to a stop, and the evidence is conflicting as to whether it was caused by an employee ringing the starting signal or a drunken passenger on the car doing so, whose condition, from his appearance and demeanor, was not reasonably observable, or whose act could not reasonably have been anticipated, the refusal by

the judge to specially instruct the jury upon this phase of the defense, upon a proper prayer duly tendered, constitutes reversible error.

APPEAL by defendant from *Long, J.,* at the Second April Term, 1918, of MECKLENBURG.

This is an action to recover damages for personal injury caused, as is alleged, by the negligence of the defendant.

Defendant owns and operates a line of interurban electric railway between Charlotte and Gastonia, via Rhynes Station, a regular stop. Plaintiff, Cora Pride, purchased a ticket from Charlotte to Rhynes Station and became a passenger upon defendant's train of two cars for that point, leaving Charlotte about 10:30 p. m., 23 December, 1916, and duly notified the conductor that she desired to alight at Rhynes Station. Plaintiff, Cora Pride, was accompanied by her husband, and when the train came to stop at Rhynes Station they both proceeded to get off. Just after plaintiff's husband had alighted and as plaintiff herself was in the act of alighting the train suddenly and without warning started forward, throwing her violently to the ground, whereby she was injured severely, so that she was confined to bed for some time.

Plaintiff testified that the colored porter, Bob Gayden, pulled the bell cord which caused the train to start prematurely, when he knew, or by using his faculties could have known, that she was in the act of descending the car steps. Defendant's witnesses testified that this negro porter had the right to pull the bell cord, that it was part of his duties.

Defendant's witnesses testified that the negro porter did not pull the bell cord and start the train, but that a passenger on the train, whose name is unknown, pulled the cord and started the train. The only witness who testified that Gayden, the porter, pulled the cord and started the cars was the plaintiff. Gayden, the porter, testified that he did not pull the cord and was on the ground when the car started, and he was corroborated in this by the conductor, Taylor.

J. M. Kendrick, a witness for the defendant, testified as follows, to wit: "I am the deputy sheriff of Gaston County, and was a passenger on the train the night Cora Pride fell out here at Rhyne. I do not recall the name of the man that started the car, but it was a white man standing right there close to me. He was a passenger in the car, and got off at Mount Holly. He was on the train from here out there. He was drinking. I saw Bob Gayden on the ground. He was on the ground when the car started. The man who started the car was under the influence of liquor. If they had been in the car they could have seen it. The conductor went through taking up tickets. I got after the man about drinking. I was standing up in there. The man was not cutting up any. No, he had not been giving any trouble before

that. When the conductor was passing through the car he was behaving all right. He had not been disorderly in Mr. Taylor's presence."

The defendant requested his Honor to charge the jury as follows: (1). If you find from the evidence the facts to be that the defendant's train was started by a stranger, without authority from it, you will answer the first issue "No."

His Honor refused to give this instruction, and the defendant excepted.

There was a verdict and judgment for the plaintiff, and the defendant appealed.

*Clarkson, Taliaferro & Clarkson for plaintiff.*
*Osborne, Cocke & Robinson for defendant.*

ALLEN, J. Common carriers are held to the highest degree of care for the protection of passengers, and are liable in damages not only for the wrongful acts of their own agents, but for those of strangers if they could be reasonably anticipated. The principle is fully recognized in this State in *Perry v. R. R.,* 153 N. C., 296; *Stanley v. R. R.,* 160 N. C., 323; *Mills v. R. R.,* 172 N. C., 266, and is correctly stated in brief of counsel for the plaintiff with citation of authority.

"While a common carrier is not an insurer of its passenger's safety, and is perhaps not bound to protect its passengers from injuries by third persons to the same extent and degree as from like injuries by its own agents or employees, yet it is the duty of its employees to exercise great care and vigilance in preserving order and in guarding passengers from annoyance, violence or insult threatened by fellow-passengers. . . ." 10 C. J., 900.

"The carrier must exercise the highest diligence reasonably practicable to protect passengers from assault, abuse or injury at the hands of fellow-passengers or third persons, and the carrier is responsible to a passenger for a wrong inflicted by an intruder, stranger, or fellow-passenger, if the conductor or other servant knew or ought to have known, or ought to have reasonably anticipated, that it was threatened or was reasonably to be apprehended, and it could, with the assistance of employees or other willing passengers, have prevented it, but failed to do so." 2 Moore on Carriers (2d Ed.), 1186.

"The negligence for which the railway is held liable is not the wrong of the fellow-passenger or the stranger, but is the negligent omission of the carrier's servants to prevent the wrong from being committed. In order that such omission may constitute negligence, there is involved the essential element that the carrier or his servants had knowledge, or with the proper care could have had knowledge, that the wrong was

imminent, and that he had such knowledge or the opportunity to acquire it sufficiently long in advance of the infliction of the wrong upon the passenger to have prevented it with the force at his command." Hutchison on Carriers, sec. 980.

The converse of this proposition is equally true that the carrier is not responsible for injuries resulting from the unauthorized acts of strangers which could not be reasonably foreseen or anticipated by the exercise of ordinary care, and it was this phase of the case the defendant asked to have submitted to the jury in the instruction, which his Honor refused to give. See *Fanshaw v. Norfolk Traction Co.,* 108 Va., 300; *McDonough v. Third Ave. R. Co.,* 88 N. Y. Supp., 609; *Andrews v. Northern Pac. R. Co.,* 88 Wash., 139; *Cary v. Los Angeles R. Co.,* 157 Cal., 599; *Krone v. Southwestern, etc., R. Co.,* 97 Mo., 609; *Cohen v. Pa., etc., Transit Co.,* 228 Pa., 243; *Moore v. Woonsocket, etc., Co.,* 27 R. I., 450.

The principle was applied in *Mills v. R. R., supra,* in which a nonsuit was sustained in an action to recover damages for an assault by a fellow-passenger, who was intoxicated, upon the ground that "there was nothing in the condition or conduct of George Wooten when in the presence of the conductor, or when he could have reasonably noted it, to give indication that he was quarrelsome or unruly," and the evidence in this case falls directly within the rule stated.

The plaintiff and the other passengers had traveled from Charlotte to Rhyne, a distance of about seven miles, and requiring from twenty to thirty minutes; the conductor had been through the car, but Kendrick, apparently disinterested, and the only witness who testified to the conduct of the stranger, said "the conductor did not see him drinking." "The man was not cutting up any." "He had not given any trouble before that. When the conductor was passing through the car he was behaving all right. He had not been disorderly in Mr. Taylor's presence," and there is no evidence to the contrary.

The record as it now appears presents a sharp conflict between the plaintiff and defendant, dependent on whether the car was started by the porter or by a stranger, and the defendant was therefore entitled to the instruction prayed for.

New trial.