Celia Stollery, Appellant, v. A. A. Sprague and Britton
I. Budd, Receivers for the Chicago Rapid Transit
Company, Appellees.

Gen. No. 40,553.

210

Opinion filed June 30, 1939. Rehearing denied August 9, 1939.

FREDERICK J. BERTRAM, of Chicago, for appellant; ERNEST A. EKLUND, of Chicago, of counsel.

GARDNER, FOOTE, MORROW & MERRICK and JAMES K. MILLER, all of Chicago, for appellees; WALTER M. FOWLER, of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against defendants to recover damages for personal injuries claimed to have been sustained on account of the negligence of defendants in the operation of one of their elevated trains. There was a jury trial, a verdict and judgment in defendants' favor and plaintiff appeals.

The record discloses that shortly after 2 o'clock on Sunday, December 29, 1935, plaintiff boarded an elevated train operated by defendant receivers at the Wilson avenue station; the train, consisting of three cars, was bound for Jackson Park on the south side of Chicago. As the train rounded a curve near the Willow street station about three miles south of Wilson avenue, plaintiff was standing holding to a strap. Other standing passengers swung against her causing her to release her hold and fall, as a result of which she claims she was injured. The evidence is further to the effect that when plaintiff boarded the train the seats were all occupied and it was necessary for her to stand and hold onto the strap; that as the train proceeded south more passengers boarded the car so that quite a number of persons were standing at and prior to the time of the accident.

Plaintiff was the only occurrence witness and she testified that the car gave a lurch as it rounded the curve near the Willow street station and she fell ''over and onto the man who was in front of me, and he helped me up''; that she immediately felt pains in her back but did not take the name of the man nor any other passenger; that she remained standing on account of the crowded condition of the car until the train reached Roosevelt road or 12th street; that when she reached her destination at 63rd and South Park avenue she walked down the stairs from the elevated station and took a cab to her sister's home, 7456 Eberhart avenue, where she was going to visit; the cab driver assisted her into her sister's home where she lay down on the

davenport and had "a terrible pain in her hip" for several hours; that she left her sister's home that evening at about 9 o'clock, took a cab to the elevated station at 63rd street, rode home on the elevated, arriving there at about 10:30; that from that time on she was unable to do much work and on January 4th following called a doctor. The doctor treated her until March 28th and it was stipulated that if he were present he would testify that upon examination of plaintiff he found she was suffering from "a sprain of the muscles and ligaments of the right hip joint and leg," and that she complained of great pain which prevented her from walking; that she was confined to her bed for about three weeks.

Another doctor treated plaintiff beginning the latter part of March. He testified he examined her and found that "on pressure on the right lower back, especially on the lower part around the pelvis" and on the back of the right leg, she complained of considerable pain; that "There were no injuries except from pressure on the nerves." On cross-examination the doctor testified that in making the examination he noted she had "a condition of the spine and pelvis that was due to something at the time of her birth. We call it a hereditary or congenital deformity of the spine. She was born that way."

Defendants' position was that the case was a blind one, and they called witnesses who operated trains at about the time plaintiff claims she was injured. Their testimony is to the effect that there was no unusual lurch and that no complaint was made about anyone being injured. Defendants first heard of the matter when, January 14, 1936, they received a letter from plaintiff's counsel.

In her amended complaint plaintiff set up sec. 1157, Revised Code, 1931, p. 325, which provides that anyone operating cars on an elevated railroad shall furnish a sufficient number of cars to carry passengers comfortably and without crowding and that the passengers

shall not exceed the seating capacity of the carriers; and it was alleged defendants violated this provision of the ordinance as well as another provision of the same ordinance making it unlawful to drive such trains at a high rate of speed; that this provision was also violated, and it was charged defendants "wilfully, recklessly and wantonly drove and caused said train to jerk and lurch with great violence," as a result of which other passengers were thrown against her causing her to fall as a result of which she was injured.

Defendants in their answer denied that the ordinance was in full force and effect, but alleged that on the contrary it was invalid and not binding upon them.

Plaintiff contends that the verdict and judgment are against the manifest weight of the evidence, and in support of this counsel say the evidence shows that plaintiff was injured while a passenger on defendants' elevated train without fault on her part, and that this is sufficient to raise a presumption of negligence on the part of defendants.

We are of opinion that whether defendants drove the car too fast around the curve, in view of the fact that there were passengers standing, so as to cause it to give a severe lurch, was a question for the jury. The testimony of defendants' trainmen who operated the southbound trains (in one of which plaintiff was obviously a passenger) was to the effect that there was no unusual lurch as the train rounded the curve. It is common knowledge that all elevated trains in Chicago sway or lurch more or less in rounding curves, and that this is unavoidable.

Upon a consideration of all the evidence we are clearly of opinion we would not be warranted in disturbing the verdict of the jury confirmed as it was by the trial judge, all of whom saw and heard the witnesses, on the ground it was manifestly against the weight of the evidence.

Plaintiff further contends that the court erred in excluding the overcrowding ordinance above referred to.

We are unable to agree with this contention. The power to regulate the speed and overcrowding of elevated cars has been withdrawn from cities by the passage of the Public Utility Act in 1913. *Northern Trust Co. v. Chicago Rys. Co.*, 318 Ill. 402; *City of Chicago v. Alton R. R. Co.*, 355 Ill. 65; *City of Geneseo v. Illinois Northern Utilities Co.*, 363 Ill. 89.

Complaint is also made that the court erred in sustaining objections to questions put by counsel for plaintiff to one of the attending physicians which would tend to show a causal relation of plaintiff's injuries to the pain she claims to have suffered. On the other side counsel for defendants contend that the questions asked the doctor called for no answer that would show a relation between the "alleged injuries and the ailments which the doctor found." The two questions to which the objections were sustained are: "Q. Doctor, will you describe to the jury the functions of the nervous system, how the nervous system controls the muscles, and how it operates?

"Q. Will you describe how the functions of the body are controlled by the nervous system?" We think neither of these questions called for an answer as to whether, in the opinion of the doctor, there was a causal relation between plaintiff's injuries, claimed to have been sustained as a result of the accident, and the conditions he found upon examination. Much of the doctor's testimony we have not mentioned, but we think upon a consideration of all of it that plaintiff was not prejudicially affected even if it should be thought that the ruling was somewhat technical.

Complaint is also made that the court erred in refusing to give instructions 1, 2, 3, 4, 5 and 6 requested by plaintiff. No. 1 said that the "duty of care and of abstaining from injuring another" applied to the deformed and sick and weak as well as to the strong and healthy. By No. 3 it was sought to have the jury instructed that where a passenger train is overcrowded

and the employees operating the train know of such condition it is their duty to exercise additional care commensurate with the dangers, etc. We think these instructions are covered by others given. The issues were simple and easily understood, and we are clear that the jury was not misled. Refused instructions 4 and 5 had to do with the overcrowding ordinance, which we have held was properly excluded, and it was therefore not error to refuse such instruction.

Complaint is also made to instructions 1, 2, 7, 8, 10, 11, 14, 15, 17 and 18 given at defendants' request. By instruction 1 the jury was told that it was not required to believe a thing to be a fact simply because some witness had sworn to it if it believed from the evidence and conduct of such witness that his testimony was improbable. We think the instruction was not erroneous.

The substance of instruction number 2 was that before plaintiff could recover for any of the ailments complained of, she must show they resulted from the accident and not from other causes. The objection to this instruction is, we think, hypercritical.

The principal objection to instruction 7 is that it ignores the claimed negligence alleged as to violation of the city ordinance. From what we have said it is obvious the objection is untenable. By instruction 8 the jury was told that plaintiff was a competent witness, yet the jury had a right in weighing the evidence to take into consideration that she was the plaintiff, etc. This instruction has been approved in many similar cases. Instruction 10 also was a stock instruction to the effect that plaintiff must prove her case by a preponderance of the evidence; that if the evidence was evenly balanced or preponderated in favor of defendants the verdict should be "not guilty." Obviously this instruction was proper.

It is said that instruction 15, although a stock instruction requiring the placing of the burden of proof upon plaintiff, specified 4 things that plaintiff must prove by

a preponderance of the evidence before she could recover, the fourth of which was that the negligence, if any, "was the proximate direct cause of the plaintiff's injury." It is said this instruction might be proper in some personal injury suits but not in those involving common carriers where the suit was brought by a passenger, etc. We think the objection is untenable.

By instruction 17 the jury was told that while defendant company was required to exercise the highest degree of care for the safety of its passengers reasonably consistent with the practical operation of its train, yet defendants were not insurer of the absolute safety of the passengers, and that if it had performed all its legal obligations to its passengers by exercising such care there could be no recovery. We think there is no merit in the objection.

Instruction 18 told the jury that if it believed from the evidence that plaintiff was injured as the result of a mere accident without negligence on the part of plaintiff or defendants, it should find defendants not guilty. We think it obvious that the instruction was entirely proper.

We have examined all the other instructions and find that none of them is reversibly erroneous; nor was there any such error in refusing any of the tendered instructions.

The court gave 7 instructions at plaintiff's request and 16 requested by defendants. We think the objection made by plaintiff, that the court gave an excessive number of instructions on behalf of defendants is well taken. Generally a less number of instructions is more helpful to the jury, but upon a consideration of all of them we think the verdict and judgment ought not to be disturbed.

The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

MATCHETT, P. J., and McSURELY, J., concur.