Emma Ostby, Appellee, v. Chicago Transit Authority, Appellant.

Gen. No. 44,232.

Opinion filed March 1, 1949. Released for publication April 26, 1949.

WERNER W. SCHROEDER, WILLIAM S. ALLEN, JOSEPH P. BRODIE, and ARTHUR J. DONOVAN, all of Chicago, for appellant; WILLIAM J. FLAHERTY, of Chicago, of counsel.

JAMES A. DOOLEY, of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiff brought suit to recover damages for injuries sustained in alighting from one of defendant carrier's street cars. Motions of defendant for a directed verdict at the close of plaintiff's case, and again at the close of all the evidence, were denied. The jury returned a verdict for plaintiff assessing her damages at $28,600. Defendant thereupon filed motions for judgment notwithstanding the verdict and for a new trial, both of which were overruled. Defendant appeals from the judgment entered on the verdict.

Plaintiff was 72 years old at the time of the trial. On December 2, 1945, accompanied by two of her friends, Asta Eid and Anna Anderson, she boarded an eastbound street car on Fullerton avenue, intending to alight at Rockwell street. When the car arrived at

that intersection, it came to a stop and one passenger alighted from the rear platform ahead of her. Plain-tiff, who sat on a long seat near the rear of the car, then proceeded to alight, with Mrs. Eid and Mrs. Anderson following her. She took hold of a bar with her left hand, got one foot down on the step, and before she could get the other foot down, the car started forward, causing her to fall on the safety island. When the car started her feet were on the running board, and she was thrown before she could get off. The conductor stood behind her on the rear platform. There is no contention that plaintiff was not in the exercise of due care for her own safety when she alighted from the car, nor is any question raised as to the amount of the verdict. Aside from defendant's criticism of several instructions, the sole question presented is whether plaintiff failed to prove that her fall and injuries resulted from the negligence of the defendant.

Charles Carlson, the conductor, had been employed in that capacity by the Chicago Surface Lines for more than six years, and had been on the Fullerton avenue run for more than five years of that period. He testified that after the car came to a stop at Rockwell street he did not signal the motorman to start, and that the car started without any signal from him. The motorman, George Krinke, who had been with the Surface Lines for 17½ years, testified, on the other hand, that as they approached Rockwell street, "I got a bell to stop, . . . and I stopped. There were about three passengers on the front platform. There were two girls there, and they wanted to get off. Then when I opened the door, they changed their mind, and I got two bells to go, and I started up. I closed the door before I started up. One bell means stop; two bells means to go; and three bells is an emergency stop. . . . When I got the two bells and started up, I got one bell to stop. I stopped right away, about two or three feet, and opened the door and looked out to see

what was wrong, and seen the conductor helping a lady up. This lady was about even with the rear steps of the car. I went back there to help him help her up, and we carried her over to the candy store that was right across from the platform. . . . I don't know who rang the bell. I just got two bells in the usual course.''

On cross-examination the following occurred: ''Q. You talked to her [plaintiff] about the accident, didn't you? A. I didn't say much to her. Q. Well, there were two other ladies with her, weren't there? A. Yes, sir. Q. Isn't it a fact you said to her, in the presence of the other ladies, 'I am sorry, but some girls on the front platform confused me?' Isn't that a fact? A. That I cannot recall. Q. You can't recall? A. No, sir.'' By way of rebuttal plaintiff called Mrs. Eid and plaintiff, both of whom testified that they heard the motorman say, in effect, ''I am sorry, but some girls on the front platform confused me.'' No rebuttal evidence was offered by defendant.

Mrs. Anderson, who was with plaintiff at the time of the accident, was shown to have been in Norway at the time of the trial, and aside from plaintiff, Mrs. Eid was the only occurrence witness called by plaintiff. She testified that when the car reached Rockwell street, another passenger stepped from the car ahead of plaintiff, and that she (Mrs. Eid) and Mrs. Anderson followed plaintiff. ''When the accident happened, I was just standing where the door . . . goes down from the body of the car to the platform. Then the lady got off and she was just going to step off, and she [plaintiff] had her one foot on the step, and then she was just going to step down when the car gave such a jerk that I had to grab the handle of the door. It was a jerk just like the car started. It just pushed me towards the door. I hold the handle. None of us were given any warning. Mrs. Anderson was in front of me, and I heard Mrs. Anderson holler, 'Mrs. Ostby, Mrs. Ostby,' and then I says, 'What happened to her?' And then I saw her

rolled over on the safety island. Then the conductor got right off, and the motorman came  . . . ."

Plaintiff's version of the occurrence was as follows: "The street car was going to stop at Rockwell. We were getting up. I stood—there is a bar there. One lady got ahead of me and got off the car. After she started off, I got off to hold on one side, with my left hand, got one foot down, and before I could get the other foot down, the car started up suddenly and I was thrown on the safety island. When the car started up suddenly, we were on the platform.  . . . Of course, when he started, I was thrown off. When the car started my feet were on the running board, and I took my chances to go to the island. The car started before I got off. My left foot was on the first step and I was to the east of the bar that is in the center of the rear. I was holding onto the bar with my left hand. Before the street car started up the conductor was right in back of us on the rear platform. He didn't give any warning or say anything to us. My two friends were behind me."

As the principal ground for reversal it is urged that plaintiff failed to meet the requisite burden cast upon her of proving that her fall and resulting injuries were proximately caused by negligence on the part of the operators of the street car. More specifically it is urged that a carrier is not liable for injuries sustained by a passenger in alighting from a street car as the result of a starting signal given by another passenger or one not an employee of the carrier without the knowledge or authority of the conductor. This contention assumes that in view of the conductor's denial that he had signaled the motorman to start, a passenger within the car must have pulled the cord to proceed after the car had come to a stop at Rockwell street, but there is no evidence whatever to support this conjecture. Defendant relies principally upon the early case of *Vischer v. Northwestern El. R. Co.*, 171 Ill. App. 544, which was affirmed in 256 Ill. 572, and several decisions

in other jurisdictions. In the *Vischer* case the declaration alleged that plaintiff was a passenger on defendant's elevated railroad; that the train stopped at the Randolph street station in Chicago to allow passengers to alight; and that when plaintiff was about to alight, the train was started by defendant's servants without warning to her, whereby she was caused to fall and was injured. There were three trials of that case. The first resulted in a verdict of not guilty and a special verdict upon the interrogatory "Was any servant of defendant guilty of negligence which contributed to causing the accident?", which the jury answered "No." A motion for a new trial was sustained because of erroneous instructions. The second trial ended in a disagreement of the jury. The third trial again resulted in a verdict of not guilty and a special verdict upon the following interrogatory "Was any servant of defendant guilty of negligence in any act or omission contributing to the cause of the accident?", to which the jury answered "No." Upon the third trial four witnesses testified that the guard on the second car, from which plaintiff was alighting, did not give the signal to start. Upon this evidence and under the instructions of the court, the jury evidently found that the train was started through the intervention of a third person, and accordingly the operators of the train were exculpated from any negligence. The Appellate Court affirmed the judgment with the following comment: "From this testimony as to giving of signals we are of the opinion . . . that the jury were justified in both their special and general verdict in finding that none of defendant's servants were guilty of negligence in any act or omission contributing to the cause of the accident, and in finding that the defendant was not guilty," and held the law to be well settled "that a railway company is not liable for injuries sustained by a passenger in alighting from a car as a result of a signal to start the car or train, given by a passenger or one not an employe of the defendant without the knowl-

edge or authority of the conductor.'' (Citing several decisions in other states.) As we read the *Vischer* case it merely holds that the defense that the car was moved through the negligence of some third person may be interposed by defendant, but whether the defense is effectively established still remains a question of fact for the jury under proper instructions; it does not hold that evidence of such a fact, when introduced by defendant, dissolves any *prima facie* case made by plaintiff, nor that the question whether a train was started through the negligence of a carrier's employee or through the act of a third person becomes a matter of law upon the motorman's testimony that he, in effect, received a starting signal and the conductor's denial of the giving of such signal. In the case at bar the only evidence adduced upon the trial was the conductor's testimony that he did not pull the bell cord signaling the motorman to start the car before plaintiff had alighted, and the motorman's testimony that he had received the two-bell signal for starting the car. In the *Vischer* case there was not only a verdict of not guilty but a special finding to the effect that no servant of the defendant carrier was guilty of negligence in giving a signal. The defense that a third person started the car was evidently proved to the satisfaction of the jury, and both the Appellate and Supreme Courts treated the subject matter of the defense as proper for determination by the jury. After the case had been taken to the Supreme Court, Mr. Justice CARTWRIGHT, speaking for the court, said that ''the employees of the defendant were free from any negligence, and it is not contended that a carrier of passengers is liable for injuries sustained by a passenger as a result of a signal to start a train not given by any employee and without the knowledge or authority of any employee of the carrier.''

In the case at bar the court instructed the jury that ''under the law a street railway company would not be liable for injuries sustained by a passen-

ger in alighting from a car as a result of a signal to start the car given by a passenger or someone not an employee of the defendant without the knowledge or authority or consent of the conductor," and "if you believe from the evidence in this case that the street car in question was started as a result of a signal given by some person other than the conductor, and if you further believe that such signal was given without the knowledge or authority or consent of the conductor, then you are instructed that you should find the defendants not guilty." These instructions followed the rule laid down in the *Vischer* case and committed to the jury the task of passing upon the credibility of the witnesses, including the conductor and motorman, and determining as a matter of fact whether the conductor set the car in motion, whether it was started by the motorman without a signal from the conductor, or whether a passenger gave the signal to start, without the knowledge, authority or consent of the conductor. These were questions of fact touching upon the alleged negligence of the operators of the car, to be determined by the jury, who heard the testimony of plaintiff's witnesses as well as that of the two operators of the car; and in deciding the question of negligence it also became their duty to pass upon the credibility of witnesses. Plaintiff's given instruction No. 13 charged the jury that "you are not bound to believe anything to be a fact simply because a witness stated it to be so, provided you believe from all the evidence that such witness is mistaken or has testified falsely as to such fact." Under that instruction the jury were not required to give credence to the conductor's denial that he had signaled the motorman to start, if they believed from the evidence and the conduct of that witness that his testimony was improbable. *Stollery v. Sprague,* 301 Ill. App. 209, 215.

Decisions in other states cited by defendant are readily distinguishable from the case at bar. In *Krone v. Southwest Missouri Elec. Ry. Co.,* 97 Mo. App. 609,

71 S. W. 712, it appeared that the judgment was reversed and the cause remanded for a new trial because the court failed to instruct the jury that if the car was started by the act of a third person, the carrier would not be liable. In *Cary v. Los Angeles Ry. Co.,* 157 Cal. 599, 108 Pac. 682, there was a verdict for defendant, and also a special finding that the proximate cause of plaintiff's injury was the unauthorized act of a passenger in giving a starting signal. In that case there was abundant evidence that some third person was responsible for the movement of the car. In *Pennsylvania R. Co. v. Cook,* 180 Md. 633, 26 Atl. (2d) 384, the facts disclosed that a fellow passenger deliberately pulled the cord to go ahead while the plaintiff was alighting. In *Moore v. Woonsocket St. R. Co.,* 27 R. I. 450, 63 Atl. 313, the motorman testified that he had received no signal to stop or start the car. It was there held that the court erred in refusing to instruct the jury that if the car was started by a third person, the defendant was not guilty. In *Pride v. Piedmont & N. Ry. Co.,* 176 N. C. 594, 97 S. E. 418, defendant introduced positive evidence that an intoxicated person pulled the cord and gave the starting signal. On appeal it was held to be a question of fact for the jury. Likewise in *Wagner v. New York City Ry. Co.,* 107 N. Y. S. 807, the evidence disclosed that the bell to start was given by a young man standing on the platform. Plaintiff had judgment, which was reversed because the court failed to give an instruction that if the starting of the car had been caused by the act of a third person, the defendant was not liable, and a new trial was ordered. In *Fanshaw v. Norfolk & Portsmouth Traction Co.,* 108 Va. 300, 61 S. E. 790, the positive evidence showed that a boy gave the signal to go ahead. In *Cohen v. Philadelphia Rapid Transit Co.,* 228 Pa. 243, 77 Atl. 500, the sole question presented was as to who gave the starting signal, since there was no other evidence of negligence. Both sides introduced evidence on this phase of the

case, and the jury determined the issue. It will thus be seen that in substantially all the cases in other states cited by defendant there was credible evidence as to who caused the car to start, and the court in all these cases held that under proper instructions it was a question of fact for the jury.

Aside from the foregoing consideration, it appears that one of the allegations of negligence charged in the complaint in the case at bar was that defendant negligently and improperly permitted the car to start with a ''sudden, violent and unusual lurch or jerk,'' thereby causing the plaintiff to fall. We have heretofore set forth the evidence of plaintiff's witnesses bearing upon this subject, and regardless of whether defendant's servants were negligent in causing the car to start before plaintiff had an opportunity to alight, it was a question of fact for the jury to determine whether plaintiff proved the allegations of the complaint charging negligence in improperly permitting the car to start in the manner charged. Notwithstanding defendant's denial in its pleadings and the testimony of the conductor that the car ''started up slowly,'' it was still a question for the jury under the allegations of the complaint.

The only other ground for reversal relates to the giving of several instructions offered by plaintiff. We have examined these instructions carefully, and find them free from prejudicial error.

The case was fairly tried. The jury, who were the judges of the only defense interposed, resolved the issues against defendant. The judgment should be affirmed, and it is so ordered.

*Judgment affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.