R. T. STANLEY v. SOUTHERN RAILWAY COMPANY.

(Filed 13 November, 1912.)

1. **Railroads — Excursion Trains — Protection for Passengers—Anticipated Results.**

It is the duty of a railroad company to have a sufficient number of officers in charge of its train to preserve order, and it is held in this case that only two men, the conductor and the trainmaster, were not force sufficient for an excursion train of twelve or fourteen coaches, of both white and colored people, carried separately, when drinking and rowdyism thereon might reasonably have been anticipated.

2. **Railroads—Excursion Trains—Protection for Passengers—Police Powers—Interpretation of Statutes.**

It is no defense that those in charge of an excursion train of twelve or fourteen coaches leaving from a North Carolina city, and containing white and colored passengers, had no authority to arrest passengers who were rowdy and shooting pistols in the coaches, in an action for damages sustained from a pistol shot by one of the passengers, for under our statutes the railroad company had the right to swear in officers to take charge of the train. Revisal, secs. 2605, 2606, 3757 (b).

3. **Railroads—Excursion Trains—Protection for Passengers—Negligence—Questions for Jury—Contributory Negligence.**

In an action for damages against a railroad company sustained by the plaintiff from being shot by another passenger on an excursion train of twelve or fourteen coaches containing both white and colored people, there was evidence tending to show that the railroad company had only the conductor and the trainmaster to preserve order; that several colored passengers had been drinking and had an acquaintance of the plaintiff down on the platform of a coach where the coaches for white and colored people came together, beating him, and in endeavoring to save his acquaintance, the plaintiff was pulling him from the place of assault into the coach for white people, when he, in turn, was assaulted, and one of the negroes shot him through the body. The conductor had replied that he had no authority to arrest people, when requested to repress the shooting and rowdyism which had been going on in the "colored" coaches, but neither he nor the trainmaster were near when the plaintiff was shot: *Held*, sufficient to go to the jury upon the issue of defendant's negligence, and that the plaintiff was not barred of his recovery upon the issue of contributory negligence.

ALLEN, J., concurring in result; BROWN, J., dissenting.

APPEAL by plaintiff from *Whedbee, J.,* at August Term, 1912, of GUILFORD.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*John A. Barringer for plaintiff.*
*Wilson & Ferguson for defendant.*

CLARK, C. J. The plaintiff was a white passenger on a mixed excursion train from Greensboro to Norfolk and return, in August, 1910. There were twelve or fourteen cars in the train. The colored passengers were in the forward cars and the white passengers in the rear cars. On the return, just before the train arrived at Franklin, Va., the plaintiff, who was riding in the second white car behind the rear colored car, being unable to get a seat, went forward to find a friend, Luther Edmundson, and as he got to the front door of the front white passenger car he saw eight or ten negroes, in a drunken condition, just inside the rear colored coach in front of him, trying to take a bottle of whiskey from Luther Proctor, another white man whom he knew. According to his evidence, the negroes had knocked Proctor down and were beating him over the head. They were cursing and in a boisterous condition. The plaintiff was standing in the door of the white car next the colored coach when he saw the negroes beating Proctor over the head and having him down on the floor. Knowing Proctor, he stepped across the platform and caught Proctor by the arm and attempted to help him up. When he did so, the negroes began to curse him, and one of them struck him over the head and staggered him to the platform. Proctor got loose from them, and the plaintiff then undertook to leave the negroes and get back to the white car, and as he got back to the door of the white car, one of the negroes shot him through the body. He testified that he took hold of Proctor and pulled him out from under the negroes to keep them from killing him. There were no officers in sight at the time nor any on the train. The defendant had no one aboard except an engineer and fireman on the engine, a flagman, who rode in the rear coach, his proper place, a conductor,

and a trainmaster. There were fourteen coaches in the train. Pistols were being fired by the people in the colored car, who were rowdy and boisterous. The conductor, when asked why he did not keep order, said he had no authority to arrest the men.

Under Revisal 1905, secs. 2605, 2606, 3757 (b), the railroad had the right to swear in officers at Greensboro to take charge of the excursion train. It certainly was the duty of the defendant to have a sufficient number of officers in possession of the train to preserve order. This was not done, and, indeed, it may be said even as a matter of law, that two men, the conductor and trainmaster, were not force enough to preserve order in a mixed excursion train of fourteen coaches, especially as part of them were white and part colored and there was drinking and rowdyism, which might reasonably have been anticipated.

The evidence, which must be taken in the light most favorable to the plaintiff, shows that the negroes were drinking in Norfolk; that they had firearms and whiskey and were drinking and shooting along the trip back. Certainly the jury might well have found, if the evidence had been submitted to them, that the defendant was negligent in not having a more efficient force and in not having taken more effective precautions to prevent such an occurrence as this.

It was argued to us that the plaintiff was guilty of contributory negligence in going into the colored car. But taking his evidence to be true, he was standing at the front end of the white coach, and seeing a white man being brutally treated by the negroes and in danger of losing his life, he went forward a few feet to rescue him. It cannot be held as a matter of law that this was contributory negligence. The plaintiff was simply obeying the most ordinary dictates of humanity.

Upon the evidence, the case should have been submitted to the jury, with proper instructions. The judgment of nonsuit is

Reversed.

ALLEN, J., concurring in result.

BROWN, J., dissenting: I am of opinion that the motion to nonsuit was properly allowed. As I read the record, there is

no just ground upon which to hold the defendant liable for negligence in failing to protect the plaintiff in a sudden affray in which he voluntarily took part without reason for doing so.

The carrier is not an insurer of the lives of its passengers, and is not required to foresee and guard them against all assaults, but only such as from the circumstances may reasonably be expected to occur. *Penny v. R. R.,* 153 N. C., 296; *Britton v. R. R.,* 88 N. C., 536.

Mr. Hutchison states the true rule as follows:

"The negligence for which the carrier is held liable is not the wrong of the fellow-passenger or the stranger, but is the negligent omission of the carrier's servants to prevent the wrong from being committed. In order that such omission may constitute negligence, there is involved the essential element that the carrier or his servants had knowledge, or with proper care could have had knowledge, that the wrong was imminent, and that he had such knowledge or the opportunity to acquire it sufficiently long in advance of the infliction of the wrong upon the passenger to have prevented it with the force at his command." Hutchison on Carriers, sec. 980, page 1124, and cases cited.

The Supreme Court of Indiana holds that "If a passenger is violently assaulted or ejected from the train by a fellow-passenger while the conductor is absent, or attending to his duties in another part of the train, not knowing of the assault or that it was threatened, the carrier cannot be held liable therefor." *R. R. v. Arnold,* 26 Ind. App., 190. In that case many authorities are cited.

I am unable to find any decided case or text-writer which warrants holding the defendant liable under the evidence in this case, and none is cited in the opinion of the Court.