## J. M. F. MILLS v. ATLANTIC COAST LINE RAILROAD COMPANY AND GEORGE WOOTEN.

(Filed 18 October, 1916.)

**1. Carriers of Passengers—Safety of Passengers—Negligence—Insurers.**

While a railroad company, as a common carrier, is held to a high degree of care to protect its passengers, and its conductors and station agents are made special policemen by statute to better enable it to perform this duty, it is not held liable as insurers for injuries to their passengers, which, in the exercise of such care, their conductors, employees, agents, etc., could not have reasonably foreseen and prevented.

**2. Same—Trials—Evidence—Nonsuit.**

Where a passenger, while intoxicated on a passenger train, assaults another passenger while the conductor is in another coach attending to his duties, and though in an intoxicated condition the aggressor had given no indication to the conductor that he was quarrelsome or unruly, but, to the contrary, had been courteous and polite to him, offering to pay him for some of his eggs he had stumbled over in the baggage car, and had peaceably left this car at the conductor's request; and the conductor had no intimation that this passenger was either intoxicated or likely to commit the assault; and, thereafter, as soon as he heard of the assault, arrested the aggressor, who went peaceably to destination, where he turned him over to the police of the city: *Held*, no evidence of actionable negligence which would render the company liable in damages for assault.

CIVIL ACTION tried before *Devin, J.*, and a jury, at July Term, 1916, of ONSLOW.

The action, by a passenger on defendant's train in August, 1916, was to recover damages of defendant company for failure to exercise proper care in protecting plaintiff from an assault and battery by another passenger, George Wooten. On denial of liability, there was verdict for plaintiff, and defendant excepted and appealed.

*D. E. Henderson and Duffy & Day for plaintiff.*

*Thomas W. Davis, George Rountree, and Frank Thompson for defendant.*

HOKE, J.   Railroad companies, in the exercise of their franchise as common carriers of passengers, are held to a high degree of care in looking after the safety of passengers upon their trains.   In further-ance of this obligation their conductors and station agents are consti-tuted, by the State statutes, special policemen to enable them the better to perform their duty, and the company is responsible for assaults and actionable wrongs committed upon them by other passengers or third persons which could have been provided against or prevented by the utmost vigilance and foresight.   *Stanley v. R. R.,* 160 N. C., 323; *Carpenter v. R. R.,* 124 N. Y., 53; *Kuhlen v. R. R.,* 193 Mass., 341; *Spohn v. R. R.,* 82 Mo. App., 74.

While this is the standard of care imposed in such cases, it is also well recognized here and elsewhere that these companies are not in-surers of the safety of passengers and are not liable for injuries which, in the exercise of such care, their conductors, employees, agents, etc., could not have reasonably foreseen and prevented.   *Pruett v. R. R.,* 164 N. C., 3; *Ry. Co. v. Hinds,* 53 Pa. St., 512; 2 Hutchison on Car-riers (3 Ed.), sec. 981.

In application of these principles, and on careful consideration of the facts presented in the record, the Court is of opinion that the plain-tiff has shown no right to recover in this case and that defendant's motion for nonsuit should have been allowed.   From these facts it appears that in August, 1916, plaintiff, a passenger on defendant's train, from Wilmington to New Bern, was assaulted by another passenger, one George Wooten, and, according to plaintiff's version, received pain-ful injuries.   It further appeared that plaintiff and four or five others on the train had placed their baggage in one of the coaches, and this the conductor had removed to the baggage car; that some time after leaving New Bern Wooten, who had been drinking, on going into this car to look for his valise, stumbled over a basket of eggs belonging to the conductor; that the said Wooten was very apologetic about it, and insisted on paying for the eggs, and, on being told that he was not allowed to ride in the baggage car, went back and took his seat in the coach.   There was nothing in the condition or conduct of George Wooten, when in the presence of the conductor or when he could reason-ably have noted it, to give indication that he was at all quarrelsome or unruly, and this was all the notice the conductor had that Wooten was under the influence of whiskey; that, some time after—an hour or more, so far as we can ascertain from the testimony—when the train was nearing Wilmington and the conductor was in another car making up his reports, plaintiff, who was also drinking, had an altercation with Wooten, and the fight ensued; that as soon as the conductor heard of it

he went immediately into the car where the fight took place, sat down by Wooten, who was then behaving quietly, and, on arrival at Wilmington, at the request or suggestion of plaintiff, turned him over to the local officers. Speaking to this phase of the matter, the conductor said: "I was getting off my report, and some one said that there was a scrap going on, and I went immediately, and Mr. Mills said that this man had beat him up, and his nose was scratched, and I said, 'So you want him prosecuted?' and he said, 'I do,' and I took Mr. Wooten and sat down by him from the time I got to the place where the trouble occurred until I got to Wilmington, and there I turned him over to the officers. When he was sitting with me he was absolutely quiet as he could be. I did not see Mr. Wooten walking on the train either before or after the difficulty, and could not see him staggering. I did not see him from the time he was in the baggage car looking after his baggage, and I told him it was not safe in there; to go and take his seat; that we did not allow people to ride in there; and that was the last time I remember seeing him, and there was nothing to call my attention to his being on the train at all."

On this, the testimony chiefly relevant, we are of opinion that no breach of duty has been established against the company or its employees, and that a judgment of nonsuit should be entered.

Reversed.