LUCILLE GLORIA WESLEY v. GREYHOUND LINES, INC.

No. 7910SC733

(Filed 5 August 1980)

1. **Carriers § 19.2– sexual assault on bus passenger – action against carrier – type of area surrounding station**

    In an action against a bus company to recover damages allegedly resulting from defendant's negligent failure to protect plaintiff passenger from sexual assault in the women's restroom of defendant's bus station, testimony that defendant's station was located in a high crime area, that bums, prostitutes, and their pimps frequented the bus station, that fights from area night clubs frequently spilled into the streets, that drug arrests were common in the neighborhood, and that some of these very same characters were loiterers-in-residence at defendant's bus station was competent to show defendant's knowledge of the need for insuring adequate protection of passengers going to, going from, and waiting in the bus station.

Wesley v. Greyhound Lines, Inc.

2. **Carriers § 19.2– sexual assault on bus passenger – action against carrier – instruction on absence of denial that plaintiff sustained injury – harmless error**

In an action against a bus company to recover damages allegedly resulting from defendant's negligent failure to protect plaintiff passenger from sexual assault in the women's restroom of defendant's bus station, the trial court erred in instructing the jury that defendant did not deny that the plaintiff was a victim of a criminal assault at its Raleigh terminal "or that she sustained injury or damage" where defendant did not stipulate or admit that plaintiff sustained injury or damage from the assault. However, defendant was not prejudiced by such error where (1) the jury could not have been misled by the misstatement; (2) the trial court thereafter instructed that it was for the jury to determine whether plaintiff sustained injury or damage; and (3) the trial court summarized the contentions of both parties as to the issue of injury and damage.

3. **Trial § 32.2– instruction to ignore previous charge on negligence issue**

There is no merit in defendant's contention that the trial court erred in instructing the jury to ignore its original instructions on the first issue of negligence because the jury could have disregarded the previously given instructions on the nature of the lawsuit, proximate cause, and the burden of proof.

4. **Appeal and Error § 50.2; Negligence § 40– instructions on proximate cause – use of "probable cause"**

The trial court's *lapsus linguae* in using the term "probable cause" instead of "proximate cause" in one instance in the charge was not prejudicial error.

5. **Evidence § 48; Damages § 3.4– permanency of psychological effects of sexual assault – testimony by clinical psychologist**

A clinical psychologist was not prohibited by the statute precluding the practice of medicine without a license, G.S. 90-18, from testifying as to the permanency of psychological effects on plaintiff resulting from a sexual assault. Furthermore, the psychologist's testimony was not too speculative for admission, although she used the word "guess" in stating her opinion, where her opinion was not a mere guess but was a statement of probability.

6. **Damages § 3.4; Evidence §48– expert testimony by psychologist – sufficient contact with plaintiff to provide basis for opinion**

A clinical psychologist's contact with plaintiff was not so minimal as to provide an insufficient basis for her opinion testimony as to the permanency of psychological effects on plaintiff from a sexual assault where the psychologist first saw plaintiff on 7 July 1976 approximately one month after the assault; subsequent meetings were held on 15 July 1976, 4 October 1976, 1 January 1979 and 2 February 1979; at the time of these meetings, plaintiff was suffering from severe mental damage and, in keeping with psychological practices in such cases, was being seen only upon request; and the trial court did not find that the psychologist's examinations of plaintiff were solely for trial purposes and not for treatment.

Wesley v. Greyhound Lines, Inc.

7. **Carriers § 19.2; Damages § 3.4– psychological and physical effects from sexual assault – compensable injury**

   In an action against a bus company to recover damages allegedly resulting from defendant's negligent failure to protect plaintiff passenger from sexual assault in the women's restroom of defendant's bus station, plaintiff suffered a compensable injury where her evidence tended to show that, since the sexual assault on her, she has had difficulty sleeping, has had nightmares, has awakened at night afraid that some other person was in the room threating to harm her, and has been unable to participate in or enjoy the sexual pleasures which she had previously experienced, since plaintiff has suffered a physical impact resulting in mental distress or emotional disturbance.

8. **Damages §§ 3.5, 17.5– lost wages and reduced earning capacity – unemployed plaintiff**

   In an action to recover for damages allegedly resulting from defendant bus company's negligent failure to protect plaintiff passenger from sexual assault in the women's restroom of defendant's station, the trial court did not err in instructing the jury on loss of wages and reduced capacity to earn because plaintiff was unemployed before the incident.

9. **Carriers § 19.2– sexual assault on bus passenger – liability of carrier – standard of care**

   The trial court's instruction that a common carrier must exercise the highest degree of care in foreseeing the imminence of a criminal assault on its passengers will not be held erroneous where such instruction is in accord with the rule stated in one line of prior N.C. cases, although another line of cases states that a carrier is only required to exercise ordinary or due care in foreseeing the imminence of a criminal assault on its passengers, since it is for the Supreme Court to determine which rule of law will govern when there is a conflict of rules.

10. **Carriers § 19.2; Evidence § 42– sexual assault on bus passenger – action against carrier – characterizations of persons observed around bus station – shorthand statements of fact – relevancy to show notice**

    A witness's testimony that over a period of time he observed bums, winos and panhandlers hanging around a bus station and disturbing people was competent as a shorthand statement of fact and was relevant to show notice and knowledge by the bus company of the imminence of a sexual assault on a passenger in its station.

11. **Carriers § 19.2; Evidence § 48– expert in security – adequacy of carrier's security measures**

    In an action to recover for damages allegedly resulting from defendant bus company's negligent failure to protect plaintiff passenger from sexual assault in the women's restroom of defendant's station, opinion testimony by an expert witness in the field of law enforcement and security as to the adequacy of defendant's security measures on the date of the sexual assault did not invade the province of the jury and was properly admitted.

Wesley v. Greyhound Lines, Inc.

12. Carriers § 19.2– sexual assault on bus passenger – action against carrier – evidence of need and availability of security guards and devices

In an action to recover damages allegedly resulting from defendant bus company's negligent failure to protect plaintiff passenger from sexual assault in the women's restroom of defendant's station, testimony that an officer had talked to defendant's agents about the need for and the availability of security guards was competent to prove notice to and knowledge of the need for adequate security measures by defendant, and testimony concerning the availability of security devices was relevant to the issue of negligence.

13. Witnesses § 5.2– cross-examination of plaintiff – subsequent evidence of good character

Plaintiff could properly present evidence of her good character after her credibility had been impeached by defendant's cross-examination of her.

14. Carriers § 19.2– sexual assault on bus passenger – negligence by bus company – sufficiency of evidence

Plaintiff's evidence was sufficient for the jury on the issue of defendant bus company's negligence in failing to protect plaintiff passenger from sexual assault in defendant's station where it tended to show that plaintiff arrived at defendant's station by bus at 3:00 a.m.; while waiting in the women's restroom for her cousin to pick her up, she was forcibly compelled at knife point and against her will to submit to the sexual advances of a loiterer in the station; the assailant had bothered female passengers on other occasions as they waited in the bus terminal and had pulled a gun on defendant's employee when he sought to intervene on one occasion; the employee had run the assailant out of the station about fifty times prior to the assault on plaintiff; the assailant had also been asked to leave the station on other occasions by defendant's district manager and by its terminal manager; the entrance to the women's restroom was not observable by any of defendant's employees although technological means were available to permit such observations; pimps, prostitutes, transvestites, bums, winos and loiterers were allowed to linger in the bus station where they frequently pestered defendant's passengers and were out of view of defendant's employees; fights, narcotics arrests and criminal activities abounded in the neighborhood, and persons committing the crimes were free to enter and to leave the bus station at their discretion; a police officer had talked with defendant's agents about the need for and availability of security guards, but defendant had not instituted such measures; defendant's national security director had not issued any directive pertaining to securing the bus station, and defendant's local agents had in many instances failed to report incidents such as assaults in the bus station; since the assault plaintiff has difficulty sleeping, has nightmares, is unable to interact with people, takes valium to calm her nerves, and is unable to enjoy a normal sex life or affectionate embraces from male suitors; and plaintiff will suffer permanent psychological effects from the assault. However, such evidence was insufficient for submission to the jury of issues of willful and wanton negligence and punitive damages.

APPEAL by plaintiff and defendant from *Godwin, Judge.* Judgment entered 16 March 1979 in Superior Court, WAKE County. Heard in the Court of Appeals 21 March 1980.

On 6 June 1976, plaintiff, a resident of Bishopville, South Carolina, purchased a bus ticket from defendant, Greyhound Lines, Inc. (hereinafter Greyhound), to travel from Bishopville to Raleigh. The bus on which she was traveling pulled into defendant's Raleigh bus station at approximately 3:00 a.m. on 7 June 1976. While sitting in the lounge of the ladies' restroom in the Raleigh terminal awaiting her ride, plaintiff was sexually assaulted by one Darnell Banks, a loiterer in the bus station. Plaintiff sued defendant Greyhound for negligence in not protecting her from the assault.

At trial, plaintiff asked the trial court to submit an issue as to punitive damages. The trial court refused. The jury returned a verdict of $150,000 in plaintiff's favor.

Plaintiff and defendant appealed. Other facts pertinent to this appeal are set out in the opinion.

*Thorp, Anderson & Slifkin, by William L. Thorp and Anne R. Slifkin, for plaintiff.*

*Johnson, Patterson, Dilthey & Clay, by I. Edward Johnson, Robert W. Kaylor, and Alene M. Mercer, for defendant.*

ERWIN, Judge.

DEFENDANT'S APPEAL

[1] Defendant's initial assignment of error is that the trial court erred in permitting testimony concerning the neighborhood surrounding its bus station and the type of individuals who frequented the area. We find no error.

The sole basis for defendant's objection is that the objected to testimony was highly prejudicial. It is the rule of law in our State that all relevant evidence is admissible unless excluded by some specific rule, 1 Stansbury's N.C. Evidence (Brandis rev.

1973), § 77, and relevant evidence will not be excluded simply because it may tend to prejudice the opponent for the cause of the party who offers it. 1 Stansbury's N.C. Evidence (Brandis rev. 1973), § 80. Here, plaintiff offered the objected to testimony to show that defendant had knowledge or should have had knowledge which would have forewarned it of the imminency of attack or assault on one of its passengers — the plaintiff. In 1 Stansbury's N.C. Evidence (Brandis rev. 1973), § 83, p. 259, it is stated: "Knowledge may be proved by the conduct and statements of the party himself, by statements made to him by other persons, by evidence of reputation which it may be inferred had come to his attention, and by various circumstances from which an inference of knowledge might reasonably be drawn." (Footnotes omitted.)

Evidence that defendant's bus station was located in a high crime area, that bums, prostitutes, and their pimps frequented the bus station, that fights from area night clubs frequently spilled into the streets, that drug arrests were common in the neighborhood, and that some of these very same characters were loiterers-in-residence at defendant's bus station was clearly admissible and relevant to show defendant's knowledge of the need for insuring adequate protection of passengers going to, going from, and waiting in the bus station. This is especially the case where a carrier is concerned, for the law imposes upon a carrier a special duty to protect passengers from assault, abuse, or injury at the hands of fellow passengers or third persons, and the carrier is responsible to a passenger for a wrong inflicted by an intruder, as in the instant case, at least, where the carrier or its servants knew or ought to have known that it was threatened. *See Pride v. R.R.*, 176 N.C. 594, 97 S.E. 418 (1918). We are reluctant to state the rule in its entirety, since we are called on to examine and clarify it at a later point herein. For now, we believe the portion as cited will suffice. Furthermore, we overrule defendant's contention that the trial court erred in instructing the jury on the foregoing evidence.

[2] As its next assignment of error, defendant contends that the trial court erred in stating in its charge to the jury that "it does not deny that the plaintiff was a victim of a criminal

assault at its Raleigh terminal, or that she sustained injury and damage."

In a pretrial order signed by respective counsel and approved by Judge Godwin, defendant stipulated that "[p]laintiff was sexually assaulted in the lounge of the women's restroom of the Greyhound Bus Station by Darnell Banks. Darnell Banks was found guilty of this attack."

Nowhere in the pretrial order or at trial did defendant stipulate that plaintiff sustained injury or damage. Ordinarily, a charge on the law relative to facts not shown in the evidence is prejudicial. 1 Strong's N.C. Index 3d, Appeal and Error, § 50.1, p. 320. However, no prejudicial error warranting a new trial occurs where it is clear from the charge, as here, that: (1) the jury could not have been misled by the misstatement; (2) the trial court at a later point in the charge instructed the jury that it was for them to determine whether plaintiff had sustained injury and damage; and (3) the trial court summarized both parties' contentions arising from the evidence as to the issues of injury and damage. *See* 1 Strong's N.C. Index 3d, Appeal and Error, § 50.2, p. 321.

[3] Defendant contends that the trial court erred in instructing the jury to ignore its original instructions on the first issue submitted, because the jury could reasonably thereafter have disregarded the previously given instructions on the nature of the lawsuit, proximate cause, greater weight of the evidence, *et al.*

While the trial court's instruction might have been more artfully drawn, we do not believe that the jury was misled. Immediately after the contested instruction, the jury's foreman asked: "Your Honor, this morning there was a question on the word imminent, and I anticipate that the same question will come up again when we go back. Does that refer to time span or likelihood?" This incident would indicate that the jury was very well aware of its continuing duty to consider the court's earlier instructions as they related to burden of proof, proximate cause, *et al.*, and correctly disregarded the court's instructions as to the other matters. We find no prejudicial error.

[4]  Similarly, we reject defendant's contention that the trial court's use of the term *probable cause* instead of *proximate cause* in one instance was prejudicial error. The trial court had correctly set out and defined the term proximate cause previously. In reiterating its previous instructions to the jury, the trial court committed a mere *lapsus linguae* in saying probable cause when he meant to say proximate cause. The instruction was altogether correct in all other respects, and we find no prejudicial error, for the trial court's error was mere inadvertence.

[5]  As a further assignment of error, defendant contends that the trial court erred in permitting testimony by a clinical psychologist as to the permanency of plaintiff's injuries and the indicatory symptoms. We disagree.

A psychologist in the rendering of professional psychological services may apply psychological principles and procedures for the purposes of understanding, *predicting*, or influencing the behavior of individuals. G.S. 90-270.2(e). A diagnosis by a psychologist that an external occurrence such as a sexual assault may have permanent psychological effects is clearly within his or her realm of competence. We are aware that G.S. 90-18 generally precludes the practice of medicine by an individual not licensed in accordance with the provisions of Article 1 and that a person is regarded as practicing medicine within the meaning of Article 1 if he "shall diagnose or attempt to diagnose . . . or attempt to treat . . . any human ailment, physical or mental." G.S. 90-18. While not specifically exempted by G.S. 90-18, a psychologist who limits himself to the practice of psychology and the rendering of professional psychological services as defined in G.S. 90-270.2(d) and (e) is exempt from G.S. 90-18 to that extent, and we so hold. *Cf. Maloney v. Hospital Systems,* 45 N.C. App. 172, 262 S.E. 2d 680 (1980) (nurse who was an expert in field of intravenous therapy competent to testify, even though she was not licensed to diagnose illness or injury or prescribe treatment).

Defendant's exception to Dr. Cogwell's expert testimony on the permanency of plaintiff's injuries on the ground that it is speculative is meritless. Defendant relies on our decision in

*Garland v. Shull,* 41 N.C. App. 143, 254 S.E. 2d 221 (1979). In *Garland,* a physician was allowed to testify over defendant's objection that plaintiff's "headaches may persist for years at least. An indefinite period of time." We granted defendant a new trial on the grounds that:

> " '[A] physican testifying as an expert to the conse-
> quences of a personal injury should be confined to certain
> consequences or probable consequences, and should not be
> permitted to testify as to possible consequences.' *Fisher v.
> Rogers,* 251 N.C. 610, 614, 112 S.E. 2d 76, 79 (1960). *See
> generally,* Annot., 75 A.L.R. 3d 9 (1977). Testimony tending
> to indicate that an event may occur is an indication that the
> occurrence of the event is certain or probable."

*Id.* at 147, 254 S.E. 2d at 223.

In the instant case, when asked about the permanency of plaintiff's injuries, Dr. Cogwell stated:

> "My opinion is that some of the problems are probably
> not permanent and that others are. The ones that I would
> guess to be permanent include a generally increased fear-
> fulness, particularly around strangers and particularly
> around men. A generally decreased level of people in gener-
> al, but particularly in people that she does not know well. I
> would expect her to continue to have occasional night-
> mares, although I would expect those to continue to de-
> crease as time goes on and I would expect there to be a
> continuing fearfulness in physical situations that are simi-
> lar to the one in which she was attacked."

While Dr. Cogwell did use the word, "guess," in her answer, we do not perceive the same speculativeness or conjecture in her answer as evidenced in *Garland.* It is clear that Dr. Cog-well's opinion was not a mere guess, but rather a statement of probability. We find no error in the admission of her testimony. Moreover, Dr. Cogwell's testimony as to the permanency of some of plaintiff's injuries was sufficient basis for introduction of the mortuary tables, and the trial court's jury charge as to these matters was not error. *See Gillikin v. Burbage,* 263 N.C.

Wesley v. Greyhound Lines, Inc.

317, 139 S.E. 2d 753 (1965), and *McCoy v. Dowdy*, 16 N.C. App. 242, 192 S.E. 2d 81 (1972).

[6] An ancillary argument presented by defendant is that Dr. Cogwell's contact with plaintiff was so minimal as to provide an insufficient basis for admitting her testimony. Defendant calls to our attention our decision in *Ward v. Wentz*, 20 N.C. App. 229, 201 S.E. 2d 194 (1973).

In *Ward v. Wentz, supra,* we upheld the trial court's exclusion of testimony by a physician that plaintiff's injuries were of a permanent nature where the physician's prognosis was based upon an examination made of plaintiff the day before the trial; the physician had last treated plaintiff for her injuries nearly four years before her trial; and her visit to the physician on the day before trial was not for the purpose of treatment, but rather to obtain evidence for use at trial. In upholding the exclusion of the physician's testimony, we held that under the circumstances of the case, plaintiff suffered no prejudicial error. While the facts in the instant case are somewhat similar to those in *Ward v. Wentz, supra,* we find no prejudicial error in the court's admission of the testimony in this case.

Dr. Cogwell testified:

"It is important that persons involved in crisis intervention counseling see the victim of an assault as often as the victim wants to be seen, which may not be as often as counselor can see them. It is also important for the counselor not to intrude on the victim during periods where the victim does not wish to be seen. In rape and sexual assault situations there usually is a period following the assault when a person attempts to block it all out and does not want counseling for a while."

The record indicates that Dr. Cogwell first saw plaintiff on 7 July 1976, approximately one month after the sexual assault. Subsequent meetings were held on 15 July 1976, on 4 October 1976, around 1 January 1979, and on 2 February 1979. At the times these meetings were held, plaintiff was suffering from severe mental damage, and in keeping with psychological prac-

tices in such cases, was being seen only upon request. Unlike the situation in *Ward v. Wentz, supra,* the trial court did not find that Dr. Cogwell's examinations were sought solely for trial purposes, not for treatment. We find no prejudicial error in its admission.

[7] Defendant's next assignment of error is that plaintiff did not suffer a compensable injury. We disagree.

Plaintiff presented evidence that since the sexual assault, she has had difficulty sleeping, has had nightmares, and has awakened at night afraid that some other person was in the room threatening to harm her. Since the assault, she has been unable to participate in or enjoy the sexual pleasures that she had previously experienced. When viewed properly, plaintiff's evidence indicates that she has suffered mental trauma or emotional disturbance.

In *Williamson v. Bennett,* 251 N.C. 498, 503, 112 S.E. 2d 48, 52 (1960), our Supreme Court stated:

> "It is almost the universal opinion that recovery may be had for mental or emotional disturbance in ordinary negligence cases where, coincident in time and place with the occurrence producing the mental stress, some actual physical impact or genuine physical injury also resulted directly from defendant's negligence."

Although the court denied recovery in *Williamson,* it did so because the plaintiff's injury was thought not to have been the proximate result of defendant's acts, not because of a disavowal of the universal rule. That that was the case is evidenced by reiteration of the rule in *King v. Higgins,* 272 N.C. 267, 158 S.E. 2d 67 (1967). It is significant that under the rule, a plaintiff may recover if there is "some actual physical impact or genuine physical injury." This alternative mode of proof justifying recovery is important because of the difficulty of defining "physical injury." *See Kimberly v. Howland,* 143 N.C. 398, 55 S.E. 778 (1906). Under whichever test used, we have no difficulty in finding that plaintiff has suffered a compensable injury. As a proximate result of the sexual assault by Darnell Banks,

allegedly facilitated by defendant's negligent act, plaintiff has suffered a physical impact resulting in mental distress or emotional disturbance.

When viewed under the test of physical injury, plaintiff has shown such a wrecking of her nervous system as to come within the rule so eloquently stated and explained in *Kimberly v. Howland*, 143 N.C. 398, 403-04, 55 S.E. 778, 780 (1906):

> "The nerves are as much a part of the physical system as the limbs, and in some persons are very delicately adjusted, and when 'out of tune' cause excruciating agony. We think the general principles of the law of torts support a right of action for physical injuries resulting from negligence, whether wilful or otherwise, none the less strongly because the physical injury consists of a wrecked nervous system instead of lacerated limbs."

[8] Defendant's assignment of error, that the trial court erred in instructing the jury on loss of wages and reduced capacity to earn because plaintiff was unemployed before the incident, is without merit and is overruled. *See Johnson v. Lewis*, 251 N.C. 797, 112 S.E. 2d 512 (1960), and *Purgason v. Dillon*, 9 N.C. App. 529, 176 S.E. 2d 889 (1970).

[9] We next consider defendant's assignment of error that the trial court's charge to the jury regarding the degree of care owed by a common carrier was erroneous, in that, it held defendant to a higher standard of care than is required by North Carolina law.

The trial court instructed the jury in pertinent part:

> "I instruct you that if you find that the plaintiff has satisfied you by the greater weight of the evidence that on and prior to June 6, 1976, Greyhound Lines, Incorporated, its officers, agents, or servants knew or *the exercise of the highest degree of care* for the safety of its passengers *should have known*, that a criminal assault on plaintiff or some other of its passengers in its ladies' restroom at its Raleigh terminal was imminent and that it had or in the exercise of

the highest degree of care for the safety of its passenbers [sic], should have had such knowledge long enough in advance of June 6, 1976, to have prevented the assault on plaintiff with the manpower and physical resources at hand;

And further that Greyhound Lines, Incorporated, failed and neglected to exercise the highest degree of care for the safety of plaintiff in [his] Raleigh terminal on June 6, 1976 as far as was consistent with the practical operation of its business and that such failure and neglect proximately resulted in the June 6, 1976 criminal assault on plaintiff, you will answer the first issue yes in favor of the plaintiff.

As we understand it, defendant's objection is based on the fact that the trial court instructed the jury that a common carrier must exercise the *highest degree* of *care* in *foreseeing* the imminence of a criminal assault on its passengers. Defendant argues that a carrier is only required to exercise *ordinary care* or *due care* in foreseeing the imminence of a criminal assault on its passengers.

Which standard is applicable is a matter not free from doubt.

In *Daniel v. R.R.*, 117 N.C. 592, 602, 23 S.E. 327 (1895), our Supreme Court stated the law in pertinent part, thusly: "Common carriers are insurers, subject to a few reasonable exceptions. They are held to exercise the greatest practicable care, the highest degree of prudence, and the utmost human skill and foresight which have been demonstrated by experience to be practicable." Relying on the Court's decision in *Daniel v. R.R.*, *supra*, the trial court, in *Hollingsworth v. Skelding*, 142 N.C. 246, 55 S.E. 212 (1906), charged the jury in the Supreme Court's language. Nevertheless, the Supreme Court found error. Expressly overruling its decision in *Daniel v. R.R.*, the Supreme Court opined:

"We doubt if any better definition of the duty of a carrier owes the passenger can be found than that of *Lord Mansfield in Christie v. Griggs*, 2 Camp., 29: 'As far as

human care and foresight could go, he must provide for their safe conveyance.' In commenting upon this case Mr. Barrow says: 'It must not be supposed, however, that the law requires the carrier to exercise every device that the ingenuity of man can conceive. Such interpretation would act as an effectual bar to the business of transporting people for hire.' "

*Hollingsworth v. Skelding*, 142 N.C. 246, 248-49, 55 S.E. 212, 213 (1906). Based on the Court's decision in *Hollingsworth*, a new trial was ordered in *Perry v. Sykes*, 215 N.C. 39, 200 S.E. 923 (1939), when the trial court instructed the jury as in *Daniel v. R.R., supra;* yet when presented with the same charge in *Horton v. Coach Co.*, 216 N.C. 567, 5 S.E. 2d 828 (1939), the Supreme Court found no error. Thus, two rules of law were recognized. A third rule was established in a line of cases beginning with *Britton v. R.R.*, 88 N.C. 536, where our Supreme Court established a converse proposition that:

"According to the uniform tendency of these adjudications which we admit as authorities, the carrier owes to the passenger the duty of protecting him from the violence and assaults of his fellow-passengers or intruders, and will be held responsible for his own or his servant's neglect in this particular, when, by the exercise of proper care, the acts of violence might have been foreseen and prevented; and while not required to furnish a police force sufficient to overcome all force, when unexpectedly and suddenly offered, it is his duty to provide ready help sufficient to protect the passenger against assaults from every quarter which might reasonably be expected to occur under the circumstances of the case and the condition of the parties." (Citations ommitted.)

*Id.* at 544. *See also Leake v. Coach Co.*, 270 N.C. 669, 155 S.E. 2d 161 (1967); *Harris v. Greyhound Corporation*, 243 N.C. 346, 90 S.E. 2d 710 (1956); *Smith v. Cab Co.*, 227 N.C. 572, 42 S.E. 2d 657 (1947); *Pride v. R.R.*, 176 N.C. 594, 97 S.E. 418 (1918); *Mills v. R.R.*, 172 N.C. 266, 90 S.E. 221 (1916); *Pruett v. R.R.*, 164 N.C. 3, 80 S.E. 65 (1913); *Stanley v. R.R.*, 160 N.C. 323, 76 S.E. 221 (1912) (Brown, J. dissenting opinion); *Seawell v. R.R.*, 132 N.C. 856, 44

S.E. 610 (1903). In fact, many of these cases also espouse, in part, the standard set forth in *Hollingsworth v. Skelding, supra,* requiring a carrier to provide for the safe conveyance of its passengers as far as human care and foresight can go, consistent with practical operation of the business, *e.g., Leake v. Coach Co., supra,* and *Smith v. Cab Co., supra;* while other cases simultaneously embrace the standard approved in *Daniel v. R.R., supra,* that a carrier must exercise the utmost human skill and foresight in providing for the safe conveyance of its passengers. *See, e.g., Mills v. R.R., supra.* That a conflict exists between the various rules of law as stated by the Supreme Court was recognized in Torts — Negligence — Common Carriers — Degree of Care owed Passengers, 17 N.C.L. Rev. 453, 457-58 (1939), where it is stated:

"In *Pruett v. Southern Ry.*[28] the court seems to apply both the 'high degree of care' rule and the 'reasonable care' rule. It uses this language, 'A common carrier ... is required only to exercise *proper care* to guard them [its passengers] against injuries which *may reasonably be anticipated.*' On page five of the official report the court quotes with approval as follows, ' "The rule that it is *the duty of a carrier to use the highest degree of care* to protect the passenger from wrong or injury by a fellow-passenger applies only when the carrier has knowledge of the existence of the danger, or of facts and circumstances from which the danger may be *responsibly anticipated.*" ' This language indicates that a carrier must use the highest degree of care to guard against known dangers and those of which he reasonably should know but is only required to use reasonable care to foresee danger. In a later case, *Mills v. Atlantic Coast Line Ry.,*[29] the court holds that the following language, which seems to be squarely *contra* to that set out above, correctly describes the duty owed by a common carrier to its passengers, 'Railroad companies ... are held to a high degree of care in looking after the safety of passengers on their trains ... and the company is responsible for

[28]164 N.C. 3, 4, 80 S.E. 65, 66 (1913).

[29]172 N.C. 266, 267, 90 S.E. 221 (1916).

actionable wrongs committed upon them by other passengers or third persons *which could have been provided against or prevented by the utmost vigilance and foresight* ... these companies are not insurers of the safety of passengers and are not liable for injuries which in the exercise of *such care* [this must refer to the italicized language set out above] their ... employees ... could not *reasonably have prevented.*' "

In conclusion, the author states:

"In view of the fact that jury verdicts may go one way or the other depending on the language used to describe the degree of care owed by common carriers to their passengers and the fact that the North Carolina court has used so many different phrases to designate this degree of care it seems that we would secure more uniform verdicts, and have fewer appeals, if the supreme court would definitely and finally put its stamp of approval on one consistent group of words which could be confidently used by trial courts in cases involving this question."

Where there is a conflict of rules of law and no factual distinctions can be made, as here, it is for the Supreme Court to determine which rule will govern. 1 Strong's N.C. Index 3d, Appeal and Error, § 2, pp. 180-81. Since the trial court's instruction here was in accord with at least the two rules of law imposing a high degree of care in foreseeing the imminence of an assault on a carrier's passenger, we affirm it and find no prejudicial error. We note, however, that in instructing the jury, the trial court stated that defendant Greyhound must have been able to foresee the likelihood of an assault on plaintiff or some other passenger in the ladies' restroom before liability could be imposed. This portion of the instruction was erroneous, since all that any of the standards enumerated require is the foreseeability of the imminence of an assault anywhere within the terminal. This error was favorable to the defendant, and it cannot now complain.

Defendant assigns as error the trial court's permitting the plaintiff to testify concerning future plans, feelings about sex,

and relations with other individuals. In view of our previous holding that plaintiff sustained a compensable injury, this assignment of error is overruled. *See also* Loss of Enjoyment of Life — Should It be a Compensable Element of Personal Injury Damages?, 11 Wake Forest L. Rev. 459 (1975).

Similarly, we find defendant's assignment of error relating to the testimony of witness Cherry to be meritless.

Mr. Franklin Cherry, a newspaper salesman at defendant's bus station, testified that he was present on the night of 6 June 1976 and had seen Darnell Banks after the time they had gone to school together. Defendant's Exception No. 21 is based on relevancy. We glean from the question asked that plaintiff was seeking to prove that Darnell Banks habitually frequented the bus station, inclusive of the night of 6 June 1976. His answer and the question were relevant and admissible.

[10] Defendant's Exception No. 22 is based on the following:

"Q. Can you tell us between the period of time from three a.m. to five or six a.m. during the years 1975 to June '76, can you tell us what people you saw there?

Mr. Johnson: Objection.

A. Yes.

Court: He may say what people he saw, if he knows.

Q. Go ahead, sir.

DEFENDANT APPELLANT'S EXCEPTION NO. 22

A. I saw different types of people hanging around, messing around, just panhandling and doing different types of things; just observed people, you know, upset and disturbing people passing through the terminal."

We find no error in the admission of this testimony, since it relates to the issue of notice and knowledge of the imminency of

Wesley v. Greyhound Lines, Inc.

an assault discussed previously herein. Exception Nos. 23 and 24 are of the same import, and we find no prejudicial error in the court's rulings. Mr. Cherry's use of the terms, bums, winos, panhandlers, and disturbing people, was a shorthand statement of facts. *See State v. Hunter*, 299 N.C. 29, 261 S.E. 2d 189 (1980). Consequently, defendant's Exception No. 25 assigning as error the trial court's failure to exclude the testimony and denial of his motion to strike the testimony is overruled.

[11] Defendant assigns as error the trial court's allowing Dr. Bopp, an expert witness in the field of law enforcement and security, to testify. The basis of this assignment of error is that Dr. Bopp's testimony invaded the province of the jury in giving his opinion as to the adequacy of defendant's security measures.

> "It has been said that expert testimony to be admissible must relate to some trade or pursuit requiring special skill or knowledge, but the wide range of subject matter to which expert opinion has been directed in North Carolina disproves the existence of any such limitation and demonstrates that the only question is whether the particular matter under investigation is one on which the witness can be helpful to the jury because of his superior knowledge." (Footnotes omitted.)

1 Stansbury's N.C. Evidence (Brandis rev. 1973), § 134, p. 433. It is further stated: "It seems abundantly clear that, despite occasional technical roadblocks erected by the 'rule' against invading the jury's province and by notions about the jury's sublime capacity to draw its own inferences, there can be expert testimony upon practically any facet of human knowledge and experience." *Id.* at 438. We overrule this assignment of error.

[12] Defendant assigns as error the trial court's permitting the witness Womble to testify in regard to the availability of security guards. This assignment is likewise without merit. The testimony was competent to prove notice to and knowledge of the need for adequate security measures by defendant. Here, the witness is merely reporting his actions, and his testimony was competent for that purpose.

Defendant's assignment of error relating to the testimony of the witness Olsen regarding the availability of security devices is overruled, since the testimony was relevant to the issue of negligence, *i.e.*, the standard of care imposed by law upon a carrier in the protection of its passengers and the breach thereof.

[13] Next, defendant assigns as error the trial court's permitting evidence concerning plaintiff's character.

A civil action for assault and battery is not a proceeding where character is in issue. *Smithwick v. Ward*, 52 N.C. (7 Jones) 64. The general rule in civil suits is that unless the character of a party be put directly in issue by the nature of the proceeding, evidence of his character is not admissible. *McRae v. Lilly*, 23 N.C. (1 Ired.) 118. An exception to the general rule precluding the introduction of character evidence in a civil action exists after the credibility of the party seeking to offer it has been impeached, *see* 1 Stansbury's N.C. Evidence (Brandis rev. 1973), § 50, and cross-examination is one form of impeachment. *Id.* At trial, defendant cross-examined plaintiff. Once this was done, plaintiff was free to prove her good character, although there was no direct attack upon it. *Id.* at 145. This assignment of error is overruled.

[14] The final assignment of error which we need to consider on defendant's appeal is whether the trial court erred in denying defendant's motion for a directed verdict.

> " 'On a motion by a defendant for a directed verdict in a jury case, the court must consider all the evidence in the light most favorable to the plaintiff and may grant the motion only if, *as a matter of law*, the evidence is insufficient to justify a verdict for the plaintiff.' " (Citations omitted.)

*Kelly v. Harvester Co.*, 278 N.C. 153, 158, 179 S.E. 2d 396, 398 (1971). When plaintiff's evidence is viewed in this light, it was clearly sufficient to withstand the motion for a directed verdict.

Plaintiff's evidence tended to show: On 6 June 1976, plaintiff left Bishopville, South Carolina by Greyhound bus arriving

at the Raleigh terminal in the early morning hours of 7 June 1976. Upon arrival, she telephoned her cousin for a ride and waited for the ride in the ladies' lounge. While sitting in the lounge (restroom) reading, plaintiff was accosted by one Darnell Banks, a known loiterer at the bus station, who pulled a knife on her and forcibly compelled her, at knife point and against her will, to submit to his sexual advances, including the act of fellatio. Only after he had ejaculated did Banks flee.

Since the assault, plaintiff has difficulty sleeping; she has nightmares; she is unable to interact with people; she takes valium to calm her nerves; and she is unable to enjoy a normal sex life or affectionate embraces from male suitors because of the frightening sexual assault. Her injury has been psychological in nature, resulting in irreparable damage, for which she is entitled to compensation. Defendant's former employee, Wayne Braswell, testified that Banks, on prior occasions, had bothered female passengers as they waited in the bus terminal and had pulled a gun on him when he sought to intervene on one occasion. Braswell had run Banks out of the station approximately 50 times, and on several occasions prior to the incident on 6 June 1976, Mr. Fred Mock, defendant's district manager of the Raleigh Division, and Mr. Shirley Gresham, defendant's Raleigh terminal manager, had asked Banks to leave. Indicative of Banks' activities is the testimony related by Wayne Braswell in the record:

"A. Right. The reason that I would ask him to leave, more so than anything, in one instance I had walked up to the baggage area where you set the baggage right beside the ticket counter. A girl got up and walked towards me at the same time and he started towards the front door and told me that he told her if she didn't leave with him he was going to cut her. So from then on, I more or less watched him. I heard several of the other employees say that, you know, they had heard —

MR. KAYLOR: OBJECTION to what anyone else has said.

MR. THORP: Goes to notice, Your Honor.

COURT: OVERRULED.

DEFENDANT APPELLANT'S EXCEPTION NO. 151

A. The other employees had told me from time to time that on different shifts when we would come in and discuss what had happened, that he would leave during the night and sometime with a girl and the girl would come back crying. They would ask her why she was crying and they would say he told me if I didn't leave with him he was going to shoot me or cut me, he had a gun. They said why didn't you sign a warrant. They always lived out of town, didn't have time for court and would rather forget it, just leave."

Defendant's terminal was structured so that the entrance to the ladies' restroom where the lounge was located was not observable by any of Greyhound's employees, even though technological means were available to do so. Pimps, prostitutes, transvestites, bums, winos, and loiterers, like Banks, were allowed to linger in the bus station where they frequently pestered defendant's passengers and were out of view of defendant's employees. Fights, narcotics arrests, as well as other criminal activities abounded in the neighborhood, and persons committing these crimes were free to enter, to linger, and to leave the bus terminal at their discretion.

A police officer, Officer Womble, called to the premises to remove these persons, had talked with defendant's agents about the provision and need for security guards, but defendant had not instituted such measures. Defendant's national security director had not issued any directives pertaining to securing the bus terminal, and defendant's local agents had in many instances failed to report incidents such as assaults in the bus station.

This evidence was more than sufficient to show defendant's negligent breach of its duty to protect its passengers from assaults by intruders, regardless to which standard of care in foreseeing harm defendant is held, *i.e.*, "the utmost human skill and foresight," *see Daniel v. R.R.*, 117 N.C. 592, 23 S.E. 327 (1895); "as far as human care and foresight could go," *Hollingsworth v. Skelding*, 142 N.C. 246, 55 S.E. 212 (1906); or "with the proper [reasonable] care." *See Pride v. R.R.*, 176 N.C. 594, 97 S.E. 418 (1918).

Defendant's other assignments of error have been reviewed and are without merit.

PLAINTIFF'S APPEAL

Plaintiff contends the trial court erred in failing to submit to the jury the issues of (1) whether the plaintiff was injured by the willful and wanton conduct of the defendant and (2) whether plaintiff was entitled to punitive damages. We disagree.

Plaintiff's evidence as set forth in the foregoing portion of our opinion was insufficient for the submission to the jury of the issues of willful and wanton negligence and punitive damages.

CONCLUSION

The judgment entered below is

Affirmed.

Judges MARTIN (Robert M.) and CLARK concur.