RICHARD LEE HOLIDAY v. LAWRENCE M. CUTCHIN, M.D.

No. 823SC453

(Filed 19 July 1983)

Witnesses § 5.2— character evidence improperly allowed

   In a medical malpractice action in which the jury was dealing strictly with
a medical question of what was the applicable standard of care, the trial judge
erred in allowing character and reputation evidence to be introduced on the
behalf of defendant.

APPEAL by plaintiff from *Winberry, Judge.* Judgment
entered 8 September 1981 in Superior Court, PITT County. Heard
in the Court of Appeals 10 March 1983.

   *Davis & Atkins, and McLeod & Senter, P.A., by Joe McLeod,*
*for plaintiff appellant.*

   *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by*
*James D. Blount, Jr., Nigle B. Barrow, Jr., and Timothy P. Lehan,*
*for defendant appellee.*

BECTON, Judge.

   This medical negligence action arises out of Dr. Lawrence M.
Cutchin's alleged failure properly to diagnose and treat Richard
Holiday, who complained of pain in his left leg and foot when seen
in the Edgecombe General Hospital on 1 April 1980. Richard Holi-
day's left leg was subsequently amputated.

I

   The facts in this case are virtually uncontroverted. On 1
April 1980, Dr. Lawrence Cutchin examined Richard Holiday who
was crying and complaining of pain in his left leg and foot. Holi-
day's history revealed that he had been injured while playing
basketball two days prior thereto. Dr. Cutchin manipulated Holi-
day's ankle and knee and found full range of motion. Additionally,
Dr. Cutchin had an x-ray taken of Holiday's leg; the x-ray did not
reveal any fracture. Dr. Cutchin diagnosed Holiday as having
muscle strain and prescribed heat and Darvon for pain. Dr. Cut-
chin did not take the peripheral pulse of Mr. Holiday on either
leg, nor did he consider, during his examination, that Mr. Holiday
might have a vascular problem.

Two days later, on 3 April 1980, Holiday again returned to the Emergency Room complaining of pain in his left foot and ankle. This time he was seen by Dr. James Kelsh, who, upon examination, discovered that Holiday's left leg was pale and cold to the touch. Additionally, the peripheral pulse in the left leg was absent. Holiday was immediately diagnosed as having vascular insufficiency of the left leg and was rushed to Pitt Memorial Hospital in Greenville, where his left leg was amputated below the knee. Later, an above the knee amputation was necessary.

## II

Upon these undisputed facts, Holiday contends that Dr. Cutchin was negligent in not considering that Holiday might be suffering from vascular insufficiency and in not taking the peripheral pulse of Holiday's leg on 1 April 1980. Indeed, two of Holiday's medical experts expressed their opinions that Dr. Cutchin's care of Holiday did not meet the standard of care within the community in which Dr. Cutchin practiced.

On the basis of the same undisputed evidence, Dr. Cutchin's three medical experts concluded that the treatment and care which Dr. Cutchin provided Holiday were within the standard of care for physicians in the community in which Dr. Cutchin practiced. Similar testimony was given on Dr. Cutchin's behalf by Dr. James Kelsh, although Dr. Kelsh was called as a witness by Holiday.

As can be seen, this case does not involve a factual dispute about what Dr. Cutchin did or did not do; it does not involve Dr. Cutchin's good or bad judgment. Indeed, the issue to be resolved—whether Dr. Cutchin's treatment was in accord with the applicable standard of care—is not dependent on the credibility of Dr. Cutchin.

The dispositive issue in this case concerns the introduction into evidence of testimony concerning Dr. Cutchin's character and reputation, and with the trial court's charge to the jury concerning that evidence. Because we find that Dr. Cutchin's character had not been impeached and because the issues presented to the jury did not require it to resolve Dr. Cutchin's credibility, we hold that the trial court erroneously admitted evidence of Dr. Cutchin's character and reputation. It is not necessary therefore to

discuss the trial court's instruction on character and reputation evidence.

## III

> Evidence of the good or bad character of a party to civil action is generally inadmissible. Such evidence is ordinarily too remote to be of substantial value, tends to confuse the issues and unduly protract the trial, and (most important of all) offers a temptation to the jurors to reward a good life or punish a bad man instead of deciding the issues before them.

1 *Brandeis, North Carolina Evidence* § 103 (2d rev. ed. 1982), p. 385. This general rule, like most others, is subject to court engrafted exceptions. Therefore, character evidence is admissible when character is directly in issue as in actions involving moral intent: seducing an innocent or virtuous woman, defamation, or malicious prosecution. Similarly, character evidence is admissible when the credibility of the party witness has been challenged or impeached. *See, e.g., Lorbacher v. Talley*, 256 N.C. 258, 260, 123 S.E. 2d 477, 479 (1962) in which our Supreme Court said: "Where a party testifies and the credibility of his testimony is challenged, testimony that his general character is good is competent and proper evidence for consideration upon the truthfulness of his testimony." The general rule cited in *Lorbacher* was subsequently followed in *Pearce v. Barham*, 267 N.C. 707, 149 S.E. 2d 22 (1966).

We are aware of this Court's statement in *Wesley v. Greyhound Lines, Inc.*, 47 N.C. App. 680, 698, 268 S.E. 2d 855, 866, *pet. for disc. review denied*, 301 N.C. 239 (1980), that "cross examination is one form of impeachment" and that since defendant cross examined plaintiff at trial, "plaintiff was free to prove her good character although there [had been] no direct attack upon it." [Citation omitted.] That statement, however, must be considered along with the facts in *Wesley*. In the *Wesley* case, " 'moral intent [was] marked and prominent in the nature of the issue.' " Brandeis, § 103, p. 387. For example, (1) the complaint alleged that Darrel Banks, armed with a knife, assaulted, raped and forced Lucille Wesley to submit to violent and unnatural sex acts with him in the women's restroom of the Greyhound Bus Station; and (2) defendant Greyhound Lines, Inc., in the face of allegations that they negligently maintained their premises, filed an Answer averring that plaintiff (a) was at fault for what happened

to her because she arrived at the Greyhound Bus Station at 3:00 in the morning with full knowledge that she would not be met upon her arrival, (b) left a place of safety and went into and remained in a place of danger, and (c) was placed on notice by her prior conversations with Banks that she might be sexually molested. Thus, the whole tenor of the trial put Lucille Wesley's character in issue. (There was more testimony in the record concerning the pimps, prostitutes and homosexuals who frequented the area of the Greyhound Bus Station than there was testimony concerning what Banks actually did to Ms. Wesley.) Again, viewed in this context, *Wesley* must be limited to its facts.

Clearly, *Wesley* does not mean, for example, that a plaintiff in a personal injury case can put on evidence of his or her good character when that witness has only been asked the following question on cross examination: "Are you married?" Nor does *Wesley* suggest that a witness in a civil case can put on evidence of his or her good character when the entire cross examination of the witness consists of the following:

Q. Did you say on direct examination that you had bacon and eggs for breakfast?

A. Yes.

Q. Didn't you tell me in your depositions that you actually had sausage and eggs for breakfast?

A. Yes.

Not even the most ardent trial advocacy skills proponent would suggest that the witness in either of the above examples had been impeached on any relevant matter.

Nothing we have said waters down the traditional impeachment rule. The credibility of the party or witness in a civil case must be challenged before character evidence is admissible. " 'In whatever way the credit of the witness may be impaired, it may be restored or strengthened by this . . . or any other proper evidence tending to insure confidence in his veracity and in the truthfulness of his testimony.' " *Lorbacher*, 256 N.C. at 260, 123 S.E. 2d at 479, *quoting Jones v. Jones*, 80 N.C. 246, 250 (1879).

In this case, the character and reputation evidence introduced on Dr. Cutchin's behalf should have been excluded. Dr. Cut-

chin was not impeached or discredited. As indicated in plaintiff's brief, the cross examiner "sought information relating to when Dr. Cutchin saw the plaintiff, what he found, . . . and how he examined him, what he considered in this examination and what instructions were given to the plaintiff." The cross examiner did make reference to an alleged inconsistent statement in Dr. Cutchin's deposition concerning whether Dr. Cutchin was called to the emergency room or went there without being called, but that question, in the context of the cross examination, did not impeach or discredit Dr. Cutchin. Dr. Cutchin's answer—"I may have been called at home, but I believe that I was out to have dinner and then came back at that time. One or the other versions is correct, but I cannot tell which at this time"—did not help the cross examiner in any way. Moreover, as even Dr. Cutchin's attorneys admit in their brief, that question did not relate to a central issue in the case. The jury was dealing strictly with a medical question: What was the applicable standard of care? Whether Dr. Cutchin was a good or bad person or had a good reputation or character was not an issue. As suggested by plaintiff, "[t]o allow evidence of character and reputation in situations as presented by this appeal, would be to open the door in any and every negligence action to a parade of character witnesses that the plaintiff, or the defendant, is a good or bad person, as the case may be."

Because we grant plaintiff a new trial for the reasons stated above, it is not necessary to discuss the plaintiff's remaining assignments of error.

New trial.

Judges ARNOLD and HILL concur.